557 A.2d 347

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John SMAGALA, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 13, 1988.

Filed Feb. 24, 1989.

Reargument Denied May 4, 1989.

Frank J. Marcone, Media, for appellant.

Dennis C. McAndrews, Assistant District Attorney, Wayne, for Com., appellee.

Before CAVANAUGH, McEWEN and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered on March 28, 1988, by the Delaware County Court of Common Pleas against the appellant, John Smagala, follow-

ing his conviction on the charges of possession of a controlled substance (cocaine) with intent to deliver,[1] possession of a controlled substance,[2] possession of drug paraphernalia[3] and possession of a firearm without a license.[4] Instantly, the appellant argues that the trial court erroneously denied his motion to suppress certain items of evidence on the ground that the evidence was seized as a result of an illegal search. He further contends that, even if that evidence was properly seized, his conviction on possession with intent to deliver charge was based on insufficient evidence, or, in the alternative, the verdict was against the weight of the evidence. Upon review, we have determined that the evidence was insufficient to support the conviction of the appellant for possession with intent to deliver cocaine. Thus, we vacate the judgment of sentence for the possession with intent to deliver conviction and remand for resentencing on the possession of a controlled substance charge.

The facts of this case as found by the trial court sitting without a jury were set forth in its opinion as follows:

At approximately 8:50 p.m. in February 3, 1987, police officer Phillip Turner of the Ridley Township Police Department, drove by a house located at 817 East MacDade Boulevard, Ridley Township, Delaware County, Pennsylvania and observed a yellow Ford Maverick parked in the driveway. The owner of the house, a Mrs. Henry, had advised the police that she was going to be away on vacation and that no one would be home at this address. She requested that the police periodically check the property during her absence. Prior to 8:50 p.m. on February 3rd, Officer Turner had performed this service as requested on numerous occasions, however, no vehicle had been observed at the premises. When Officer Turner saw this vehicle in the driveway on February 3rd, he also

1. 35 Pa.S.A. § 780–113(a)(30).
2. 35 Pa.S.A. § 780–113(a)(6).
3. 35 Pa.S.A. § 780–113(a)(32).
4. 18 Pa.C.S.A. § 6106(a).

observed the boarded up garage located on the premises where light was shining through the cracks in the door and around the windows.

Officer Turner radioed the police station, informing them that he would be at this location for a while and requesting a registration check on the vehicle. Believing that criminal activity might be afoot, Officer Turner approached the garage and attempted to look inside. Being unable to see into the garage, but hearing movement inside, Officer Turner knocked on the door. After receiving no response, he attempted to open the door. The door was locked. Officer Turner then heard a voice from inside the garage asking who was outside. Officer Turner responded that it was the "Ridley Township Police." After a delay of approximately three to four minutes, the door was opened by Defendant, John Smagala. When the door opened, Officer Turner could see a partly disassembled vehicle in the garage.

During the aforementioned three to four minute delay, Officer Turner was notified that the Ford Maverick was owned by a Mr. Krauss who resided on 14th Street in the City of Chester. Officer Turner asked Defendant what he was doing in the garage. Defendant responded that he had rented the building and was using it to repair cars. When asked to produce documentation to confirm his story, Defendant could produce none.

Officer Turner informed Defendant as to why he was there and asked Defendant if he could "look around." Defendant replied, "Sure, I have no problem with that." (N.T. 11/17/87 pgs. 12–13). By this time Officer Dryden of the Ridley Township Police Department had arrived and he remained outside of the garage with Defendant. Officer Turner, pursuant to the permission given by Defendant, entered the garage to "look around".

On the left hand side of the garage was a workbench with a light on overhead. Officer Turner approached the bench and on top of it he observed a small glassine bag filled with small wire mesh screens varying in size of

approximately ½ to ¾ inch in diameter. The bag contained approximately 50 to 60 screens. The officer also observed several hundred burned matches and numerous matchbooks and a small glass pipe containing a wire screen inside the barrel. The glass pipe contained residue of what appeared to Officer Turner to be a controlled substance.

Directly below the bench was an open space in which at an open cardboard box. Officer Turner could look inside the box from where he was standing. Inside this box he observed a smaller box, approximately one inch high. In this smaller box Officer Turner observed a glassine bag containing a white powdery substance which Officer Turner suspected to be a controlled substance. Also in the smaller box were two bundles containing a total of 77 small glassine bags. All of these glassine bags contained what appeared to be the residue of controlled substances. Officer Turner then left the garage and Defendant was placed under arrest.

Pursuant to the arrest and prior to placing Defendant in the police vehicle, Defendant was searched. The search resulted in the following items being found in Defendant's pockets: (1) a rolled up $20 bill; (2) a razor blade; (3) a small glassine bag containing .8 grams of cocaine; (4) $834 in United States currency; and (5) four index cards, approximately 3 by 5 inches in size containing names with numerical values next to the names.

Thereafter, Defendant was taken to the police station. The Ford Maverick automobile was towed to the police station for safekeeping. At the police station, an inventory search was performed on the Ford Maverick. Defendant consented to this inventory search. During the search, the police found a loaded Smith and Wesson 9 millimeter semi-automatic pistol under the driver's seat. Defendant indicated that he owned the weapon, but did not have a license to carry it. A subsequent check with the Pennsylvania State Police confirmed that the Defendant did not have a license to carry the weapon.

As a result of the foregoing, Defendant, John Smagala, was charged on four separate criminal informations, Information No. 309A–87 charging knowing or intentional possession of controlled substances, to wit, cocaine (35 Pa. CSA § 780–113[a](30)), Information No. 309B–87 charging possession with intent to deliver controlled substance/cocaine (35 Pa. CSA § 780–113[a](30)), Information No. 309C–87 charging drug paraphernalia (18 Pa. CSA § 780–113[a](32)), and Information No. 309D–87 charging possession of firearms without a license (18 Pa. CSA § 6106(a)).

On October 21, 1987 Defendant filed a Motion to Suppress. In that Motion Defendant alleged that the February 3, 1987 search of the premises occupied by Defendant at 817 East MacDade Boulevard, Folsom, Pennsylvania, was illegal. In addition, the Defendant alleged that the search of the Ford Maverick automobile was also improper. Defendant requested that all evidence seized as a result of illegal searches be suppressed. A suppression hearing was held November 4, 1987. At the conclusion of the hearing, Defendant's Motion was denied.

On November 17, 1987 a non-jury trial was commenced. During the trial the Commonwealth presented two witnesses, Officers Phillip Turner and Charles Palo, of the Ridley Township Police Department. Officer Turner testified concerning the facts and circumstances surrounding the searches conducted on February 3, 1987 and he identified the various Commonwealth exhibits (C–1 through C–14), most of which were the items seized as a result of the three searches. Officer Palo was qualified as an expert witness in the field of narcotic investigation and the packaging, sale and distribution of controlled substances. He testified in detail concerning the significance of the Commonwealth's exhibits as they related to the sale and distribution of controlled substances. In addition, he offered the opinion that possession of these items was more consistent with possession of controlled substances. In addition, he offered the opinion that possession of these items was more consistent with possession

of controlled substances with the intent to deliver than with possession for personal use. On November 18, 1987, at the conclusion of all of the testimony, Defendant was found guilty on all Informations.

On November 20, 1987, Defendant's counsel filed timely post-trial motions. These motions were denied by Order dated February 4, 1988. On March 28, 1988 Defendant was sentenced on Information No. 309B–87 to incarceration in the Delaware County Prison for a period of not less than 4 months nor more than 2 years minus one day. On Information No. 309D–87, Defendant was sentenced to a concurrent two year probation. Sentence was suspended on Information 309C–87. With regard to the jail sentence, because of his fourteen year work history, Defendand was furloughed from 6:30 a.m. Mondays to 8:00 p.m. Fridays, so as to not jeopardize his employment. The sentence also included a provision for drug treatment as a condition of both probation and parole.

First, we will address the appellant's contention that the evidence seized during the search of the garage should have been suppressed since his consent to the search was not voluntarily given. The standard of review which governs a ruling on a motion to suppress has been set forth as follows:

In reviewing a motion to suppress, we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonableness of the inferences and legal conclusions drawn therefrom. In determining whether the record supports the court's findings of fact, we must accept the Commonwealth's evidence and so much of the evidence of the defense as, fairly read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Weik,* 360 Pa.Super. 560, 561, 521 A.2d 44, 45 (1987); *Commonwealth v. Eliff,* 300 Pa.Super. 423, 428–29, 446 A.2d 927, 929–30 (1982).

*Commonwealth v. Lemanski,* 365 Pa.Super. 332, 342–343, 529 A.2d 1085, 1089 (1987). See also, *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983).

The Supreme Court of the United States, in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), reviewed facts similar to those before us and stated:

> We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

*Schneckloth*, 412 U.S. at 248–249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. See also, *Commonwealth v. Albrecht*, 510 Pa. 603, 612, 511 A.2d 764, 769 (1986); *Commonwealth v. Markman*, 320 Pa.Super. 304, 313, 467 A.2d 336, 341 (1983); *Commonwealth v. Lowery*, 305 Pa.Super. 66, 73, 451 A.2d 245, 248–249 (1982).

■ The suppression court made the following findings of fact which are supported by the record. Officer Turner's suspicions were initially aroused by the presence of the appellant's vehicle on the premises of Mrs. Henry and by light emanating from her garage which, to the officer's knowledge, should have been dark and vacant. The officer knocked on the garage door, and, receiving no response, he attempted to open the door. The appellant then asked who was there, and Officer Turner announced he was a member of "Ridley Township Police." The appellant opened the garage door and identified himself. Eventually, Officer Turner asked the appellant if he could "look around." To which, the appellant responded, "Sure, I have no problem with that." The officer then surveyed the premises and found the evidence in plain view. Applying the standard of *Schneckloth, supra,* to those facts, we find it was entirely reasonable for the court to conclude that the appellant

voluntarily consented to the search of the garage.[5]

■■■ The appellant next asserts that the evidence obtained from his person and his vehicle should be suppressed on the basis that the evidence was seized as a result of an illegal arrest. Having determined that initial search of the garage was a valid consent search, it is quite clear that the warrantless arrest of the appellant was supported by the existence of probable cause. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Dennis*, 236 Pa.Super. 348, 344 A.2d 713 (1975). Therefor, we find that the search of the appellant's person was a valid search incident to a lawful arrest. *Dennis*, 344 A.2d at 715; *U.S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In addition, we find that the search of the appellant's vehicle was a valid inventory search incident to a lawful arrest. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Commonwealth v. Martinson*, 368 Pa.Super. 130, 533 A.2d 750 (1987); *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238 (1976).

Finally, the appellant asserts that the evidence was legally insufficient to support his conviction on the charge of possession of a controlled substance with intent to deliver.[6] "Evidence is legally sufficient to support a verdict if, when viewed in the light most favorable to the Commonwealth and making all the reasonable inferences flowing therefrom, the fact finder could find each element of the offense beyond a reasonable doubt. *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075 (1987)." *Commonwealth v.*

5. The appellant argues that his consent was coerced. As evidence of coercion, the appellant asserts that, when Officer Turner attempted originally to gain entry into the garage, the officer used such force that the bar used to secure the door was bent. However, considering all of the record as a whole, we are convinced that the trial court correctly concluded the appellant was not coerced into consenting to the search.

6. We need not consider the appellant's assertion that the verdict was against the weight of the evidence since we find that the evidence was insufficient to support his conviction on the possession with intent to deliver charge.

*Wienckowski,* 371 Pa.Super. 153, 160, 537 A.2d 866, 869 (1988). We cannot agree with the trial court's determination that the evidence justifies the appellant's conviction of possession of cocaine with intent to deliver. While some evidence of distribution of cocaine is present and evidence of possession is beyond dispute, the evidence before us is far short of the quantum sufficient to sustain beyond a reasonable doubt a conviction for possession with intent to deliver.

 The crime charged under 35 Pa.S.A. § 780–113(a)(30) provides in pertinent part:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver a counterfeit controlled substance.

Under Pennsylvania law, intent to deliver may be inferred from possession of a large quantity of controlled substances. *Commonwealth v. Santiago,* 462 Pa. 216, 223, 340 A.2d 440, 444 (1975); *Commonwealth v. Pagan,* 315 Pa.Super. 7, 461 A.2d 321, 322 (1983); *Commonwealth v. Bagley,* 296 Pa.Super. 43, 442 A.2d 287, 289 (1983). Similarly, the absence of intent to deliver may be inferred where only a small amount of the controlled substance was discovered. *Pagan,* 315 Pa.Superior Ct. at 11, 461 A.2d at 323; *Commonwealth v. Gill,* 490 Pa. 1, 5, 415 A.2d 2, 4 (1980) (small amount of controlled substance consistent with personal use, not distribution).

 Instantly, the following evidence was seized from the garage and the appellant's person: 0.8 gram of cocaine, a razor blade, a rolled up twenty dollar bill, a small amount of bicarbonate of soda, test tubes, a glass pipe, wire mesh screens, hundreds of burnt matches, hundreds of used "Klennex," four index cards with names and numerical

amounts written on them ("tally sheets"), two bundles of used, reusable glassine baggies and $834.00 in cash. Also, a loaded handgun was found under the seat in the appellant's locked vehicle.

A common sense review of the facts reveals unequivocally that the appellant possessed the cocaine for personal use, not distribution.[7] The appellant possessed only 0.8 of a gram of cocaine, a small amount consistent with personal use. Expert testimony at trial indicated that test tubes and bicarbonate of soda are used to convert cocaine in the powder form into cocaine in the rock form, "crack." The cocaine rock is then smoked in a glass pipe inside of which is a wire mesh screen. Instantly, the garage work bench was covered with hundreds of burnt matches and the appellant possessed all the necessary tools to create and smoke "crack." Those facts are consistent with personal use of cocaine. Also, a rolled up twenty dollar bill and a razor blade were found on the appellant's person. The Commonwealth's expert testified that the razor blade was used to divide the cocaine into "lines" and then the rolled currency was used to inhale those lines of cocaine through the user's nostrils. Also, numerous used "Klennex" were found on top of the work bench where the glass pipe was located. Again, those facts are consistent with personal use. The totality of the evidence leads us to the unavoidable conclusion that the appellant intended either to smoke the cocaine or inhale it.

The Commonwealth points to the glassine baggies commonly used to package cocaine for distribution as evidence of intent to deliver. However, all of the glassine baggies had been previously used, and, although they are generally reusable, many of these particular baggies had been damaged by previous use to such an extent that future use in distribution would be impossible. The Commonwealth also

7. We note our decision in *Commonwealth v. Proietto*, 241 Pa.Super. 385, 361 A.2d 712 (1976) recognized that, under certain circumstances, even a known drug dealer may be in possession of drugs merely for personal use and that those drugs held for personal use may be from the very same cache of drugs destined for distribution.

points to the large amount of cash on the appellant's person. Yet, there is no evidence of record to show that the currency was the product of drug distribution. The Commonwealth argues that the appellant possessed a handgun to protect his cash and drugs found on his person. However, the handgun was found under the seat of the appellant's car after an inventory search of the car at the police station. If, as the Commonwealth argues and the trial court implicitly agrees, the handgun was possessed to protect the appellant's cash and drugs, is it not logical that the handgun would have been inside the garage with the appellant, accessible at a moment's notice? Finally, the Commonwealth offers the tally sheets as evidence of intent to deliver. While this evidence is consistent with drug distribution, this evidence is not sufficient alone to justify a conviction for possession with intent to deliver. See *Pagan,* 315 Pa.Superior Ct. at 11, 461 A.2d at 323 (tally sheets offered to prove intent to distribute; evidence, including tally sheets, insufficient to support possession with intent to deliver).

To be sure, with the aid of additional facts, the evidence herein could support an inference that the appellant was involved in the distribution of narcotics. However, the evidence as it stands is clearly insufficient; there was no evidence of a controlled buy of narcotics, no evidence of marked currency used in a controlled buy, no evidence of the appellant's possession of a quantity of cocaine consistent with distribution, no evidence of weight scales nor testimony of an informant identifying the appellant as a drug dealer. Significantly, the police subsequently searched the appellant's residence and found no evidence of drug distribution or use. The evidence in the present case does not remotely rise to the level of evidence produced in the cases which the trial court and the Commonwealth cite in support of the conviction, as demonstrated by the following discussion of those cases.

In *Commonwealth v. Sweeting,* 364 Pa.Super. 626, 528 A.2d 978 (1987), the evidence was sufficient to support a

possession with intent to deliver a controlled substance. Therein, the defendant intended to sell methamphetamine to an undercover state trooper when, in fact, the defendant mistakenly sold meperidine to the trooper. The court held that the appellant's mistaken belief about the precise chemical nature of the substance did not render the evidence insufficient. The present case does not involve mistake as to the drug's identity and no evidence of a direct sale to a police officer or a member of the public exists.

In *Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310 (1986), we held that the evidence sufficiently demonstrated that the defendant possessed marijuana with the intent to deliver it. The evidence revealed the defendant possessed six bags of marijuana totalling 65.5 grams, packaging materials commonly used in the sale of marijuana, a controlled buy occurred within forty-eight hours of the execution of the search warrant, marked bills from the controlled buy were recovered during the search and the appellant was present at the controlled buy. Instantly, the appellant possessed only a small amount of cocaine, and there was no evidence of a controlled buy of narcotics which would link the appellant to distribution of drugs.

In *Commonwealth v. Lacey*, 344 Pa.Super. 576, 496 A.2d 1256 (1985), we found that the evidence was sufficient to support a conviction for possession of drug paraphernalia with the intent to deliver. Clearly, the holding of *Lacey*, *supra*, is inapposite presently, except that portion which held that expert testimony concerning an object's use is admissible.

In *Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035 (1984), we found that the evidence was sufficient to support the defendant's conviction on the charge of possession with intent to deliver. Probable cause for the search was based on the controlled buy of $100.00 worth of heroin from the defendant by a reliable informant and on the fact that the defendant had been convicted on similar charges previously. During the search, the defendant was found exiting the bathroom where a flushing commode was heard,

and a small amount of heroin was recovered from the commode. As a result of the search, the police discovered a large quantity of drugs, drug paraphernalia used in the distribution of drugs, over $2600.00 in cash and several guns. Instantly, the quantity of drugs was small, and there was no controlled buy or confidential informant. The seized currency was of a considerable lesser amount, and the drug paraphernalia was consistent with personal use rather than distribution.

In *Commonwealth v. Harris*, 241 Pa.Super. 7, 359 A.2d 407 (1976), we found that the evidence was sufficient to support the finding of intent to deliver. The evidence therein revealed the defendant was in possession of sixteen half spoons of heroin, two measuring spoons and a scale. The probable cause for the search was based on information from a confidential informant that the defendant was carrying a "bunch of stuff" and was on his way to meet several other persons. Instantly, no measuring devices of any kind were found, and there was no evidence from a confidential informant regarding the appellant's reputation as a drug dealer. In addition, the *Harris* court applied the holding of *Santiago, supra,* i.e. a large quantity of narcotics will permit an inference of intent to deliver. Certainly, the small amount of cocaine found on the appellant's person cannot give rise to the same inference. In fact, under the rule announced in *Pagan, supra,* such a small amount of a controlled substance raises an inference of an absence of intent to deliver.

Our current decision is clearly supported by our prior decision in *Pagan, supra.*[8] Therein, the defendant was in

8. *Commonwealth v. Bagley,* 296 Pa.Super. 43, 442 A.2d 287 (1982) also supports our decision. Therein, we found, over the Commonwealth's protestations, that the trial court was correct in arresting judgment on the charge of possession of a controlled substance with intent to deliver. The *Bagley* defendant was found to be in possession of eleven glassine baggies of heroin totalling 15.3 grams. The purity of the heroin in the baggies ranged from four to eighteen percent. The Commonwealth argued that the quantity of heroin seized, its street value, its relative purity, its manner of packaging and the defendant's possession of the opiate were together sufficient to permit the jury to

possession of 19.9 grams of marijuana, well below the quantity considered to be a small amount. 35 Pa.S.A. § 780–113(a)(31). The police also found a sheet of notebook paper which contained the names of individuals alongside amounts of money and a box of manilla envelopes. Instantly, we can analogize the index cards to the sheet of notebook paper. The *Pagan* court found that, even with the "tally sheet" included as admissible evidence, the evidence was insufficient to support a conviction for possession with intent to deliver where the only evidence was an amount of controlled substance consistent with personal use and ambiguous evidence of paraphernalia used in narcotics distribution. 315 Pa.Superior Ct. at 11, 461 A.2d at 322–323. Finding the evidence of distribution before us similarly ambiguous, we hold that the evidence presented is insufficient to support an inference of intent to deliver beyond a reasonable doubt.

A review of the trial court's opinion reveals that the court simply overlooked the fact that there was no evidence presented linking the appellant to current distribution of cocaine; rather, the court focused on the expert testimony that some of the evidence was consistent with drug distribution sometime in the past. The trial court opines that to determine the present evidence was insufficient would have the effect of requiring the Commonwealth to prove that the small quantity of drugs was actually a part of a larger quantity which had already been distributed and would have the practical effect of rewarding drug dealers who efficiently distribute their product. Tr.Ct.Op., p. 11. This is simply not the case. Had there been any direct evidence [9] that the appellant was involved currently in distribution of narcotics,

render a verdict of guilty on the intent to deliver charge. In *Bagley*, we disagreed with the Commonwealth and, likewise, here too we disagree. Instantly, the appellant possessed an amount of the drug consistent with personal use and the only evidence of the appellant's involvement in drug distribution is speculative.

9. By direct evidence we mean a controlled buy of drugs, marked currency from a controlled buy, testimony identifying the appellant as a drug dealer, weight scales, unused and undamaged glassine bags, *et cetera.*

then even a small amount of cocaine would have sufficed as the basis for an inference of intent to deliver. However, the Commonwealth was unable to present any evidence which would, without the most tenuous of assumptions,[10] support the court's determination that the 0.8 grams of cocaine was possessed for the purposes of present distribution. *See, Gill,* 415 A.2d at 4 (accepting that appellant may have delivered substance in past, absent evidence of intent to distribute the specific packet of drugs seized, intent to deliver may not be inferred.) Therefor, we find that the evidence was insufficient to support beyond a reasonable doubt the appellant's conviction on the charge of possession of cocaine with the intent to deliver. Accordingly, we vacate that portion of the judgment of sentence dealing with the intent to deliver charge and remand for resentencing on the possession of a controlled substance charge.

Judgment affirmed in part, vacated in part and remanded for sentencing in accordance with the provisions of this Opinion. Jurisdiction is relinquished.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I concur in that part of the majority opinion which affirms the judgment of sentence on the conviction for possession of a controlled substance. I respectfully dissent from the reversal of the judgment of sentence on the conviction of possession of a controlled substance with intent to deliver.

In reviewing a challenge to the sufficiency of the evidence, we are guided by the rule that evidence is legally sufficient to support a verdict if, when viewed in the light most favorable to the Commonwealth, and making all rea-

10. One such assumption is evidenced by the trial court's statement: "Obviously, if Officer Turner had confronted Defendant just prior to his last transaction, Defendant would have had in his possession more than 0.8 grams of cocaine and something less than $834.00 in U.S. currency." Tr.Ct.Op., p. 11–12.

sonable inferences flowing therefrom, the jury could find each element of the offense present beyond a reasonable doubt. *Commonwealth v. Wienckowski*, 371 Pa.Super. 153, 537 A.2d 866 (1988); *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986), certiorari denied *Griffin v. Pennsylvania*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The majority opinion agrees that there was sufficient evidence of possession of a controlled substance, "beyond dispute". However, while it concedes that "some evidence of distribution of cocaine is present", it concludes that it was insufficient to sustain a conviction of possession with intent to deliver. It is this conclusion that I believe is incorrect.

The court below stated at page 12, slip opinion:

In the instant case the Commonwealth proved that Defendant was in possession of a small quantity of cocaine. It also proved that at the same time Defendant was in possession of tally sheets, commonly used by drug dealers, a large amount of money, glassine bags used for drug distribution and a loaded gun, all of which Defendant concedes give rise to the reasonable inference that he was engaged in the distribution of narcotics.[1]

The majority opinion states at page 352: "a common sense review of the facts reveals unequivocally that the appellant possessed the cocaine for personal use, not distribution." Even counsel for the appellant indicates that the evidence goes beyond this, stating at page 12 of the appellant's brief:

---

**1.** The Opinion of the court below by Surrick, J. quotes from pages 7–8 of the defendant's brief in support of his post-trial motions, as follows:

The difficulty in this case arises out of the fact that the Defendant was in possession of only a small amount of controlled substance under circumstances consistent with the use of drugs, *while at the same time there is evidence that the Defendant was engaged in the distribution of drugs.*

\* \* \* \* \* \*

*While the possession of the tally sheets, the money, the numerous glassine bags and the gun are sufficient to give rise to inferences that the Defendant was engaged in the distribution of narcotics,* there is no evidence that the 0.8 gram was part of a larger quantity which had been distributed. (Emphasis added.)

> *Accepting all of the evidence in the light most favorable to the Commonwealth, all that can be found is that the Appellant was engaged in the sale of drugs.* Since there was no evidence that the Appellant was engaged in the sale of drugs at the time of his arrest, the most that can be found is that the Appellant had sold drugs in the past. To be sufficient to prove guilt of possession with the intent to deliver beyond a reasonable doubt, there must be some evidence, however slight, to link the drugs in the Appellant's possession to a present intent to deliver. (Emphasis added.)

Appellant argues that although the evidence established that he had been engaged in selling drugs, he possessed too small an amount at the time of his arrest to support an intention to sell those drugs. Although the majority adopts this reasoning, I find it unpersuasive. Appellant relies on *Commonwealth v. Pagan,* 315 Pa.Super. 7, 461 A.2d 321 (1983) to support his contention that absence of an intent to deliver or sell may be inferred where only a small amount of a controlled substance is found. In *Pagan, supra,* there was no evidence that defendant intended to sell or deliver a controlled substance other than the fact that he possessed a small amount of marijuana. In the instant case, there was substantial additional evidence that the appellant intended to deliver the cocaine in his possession, although he possessed only a very small amount.

In addition to the physical evidence seized by the police when the appellant was arrested, there was expert testimony by a police officer that the paraphernalia seized was more consistent with possession of cocaine, with intent to deliver, than mere possession for personal use. Expert opinion testimony is admissible to support an inference that the controlled substance was possessed with an intent to deliver. *Commonwealth v. Bagley,* 296 Pa.Super. 43, 442 A.2d 287 (1982). Footnote 3 in *Commonwealth v. Harris,* 241 Pa.Super. 7, 9, 359 A.2d 407, 408 (1976) succinctly states the proposition that the possession of a small amount of drugs will not preclude a finding of possession with intent to deliver, as follows:

3. In *Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975), our court affirmed a conviction for trafficking in narcotic drugs under the Act of Sept. 26, 1961, P.L. 1664 § 4 (35 P.S. § 780–4(q)). In that case, although there was no evidence of an actual sale, and although the appellant had only fifteen half-spoons of heroin in his possession at the time of his arrest, *our court felt that this amount, coupled with the other factors present, was sufficient for conviction.* While *Hill* dealt with a violation under the old drug act, since repealed, *the analogy between that case and the case at bar is sufficient for us to conclude that the amount involved is not necessarily crucial to establishing an inference of possession with intent to deliver, if the proper other facts are present. In the case at bar, the detective's expert testimony supplied sufficient other facts to support the inference.* (Emphasis added.)

In *Harris, supra,* a detective testified that in his opinion the amount of heroin in the possession of the defendant, consisting of sixteen half spoons, indicated that it was not for his personal use, and was possessed for the purpose of distributing it.

In the instant case, a police officer, who was experienced in narcotics cases, testified that the cocaine in the appellant's possession at the time he was arrested had a value of about $80.00. His possession of over one hundred small plastic bags used for packaging cocaine was consistent with the distribution of drugs rather than personal use. Further, drug dealers frequently carry a gun for protection, and appellant had a Smith & Wesson, since they carry drugs and large amounts of money. The appellant had over $800 in cash when he was arrested and tally sheets reflecting accounts for various customers. The Commonwealth's burden of proof may be sustained by purely circumstantial evidence. *Commonwealth v. Vishneski,* 380 Pa.Super. 495, 552 A.2d 297 (1989).

In my opinion, the totality of the circumstances justified the finding that the defendant possessed cocaine with the

486

intent to sell or deliver. We stated in *Commonwealth v. Keefer*, 338 Pa.Super. 184, 190, 487 A.2d 915, 918:

As for the possession with intent to deliver conviction, appellant argues that the quantity and purity of the methamphetamine, as well as the syringes were consistent with personal use, and not delivery, of the substance. That is true. However, appellant fails to mention the other seized items which unequivocally establish more than just personal use: empty glassine baggies, numerous needles used for injecting drugs, and scales. Moreover, appellant had very recently sold the drug to a police informant. Thus, we find the evidence was sufficient on that conviction.

We may not reject a determination of the trier of fact which is supported by the evidence, merely because we might have reached a different result in the first instance. The determination of the credibility of witnesses and the appropriate weight to be accorded to the evidence produced at trial is within the sole province of the trier of fact. *Commonwealth v. Vazquez*, 328 Pa.Super. 86, 476 A.2d 466 (1984). Accordingly, I would affirm the judgment of sentence in all respects.