J-S39039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ELIJAH BETHUNE | : | |
| | : | |
| Appellant | : | No. 399 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 8, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001161-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED DECEMBER 14, 2023**

Jason Elijah Bethune (Appellant) appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas following his jury convictions for possession with intent to deliver (PWID), possession of a small amount of marijuana, and several driving under the influence (DUI) crimes.[1] Appellant argues (1) that the trial court improperly permitted the trial to proceed in his absence; (2) that the evidence was insufficient to establish that he possessed drugs and did so with the intent to deliver; and (3) that the weight of the evidence does not support the PWID verdict.  We affirm.

The trial court summarized the facts in its Pa.R.A.P. 1925 opinion as follows:

---

[1] 35 P.S. § 780-113(a)(30), (31); 75 Pa.C.S § 3802(d)(1)(i),(iii); 75 Pa.C.S. § 3802(d)(3).

On April 8, 2021, Troopers Christina Fow and Anthony Panosetti were working in their capacity as Pennsylvania State Troopers assigned to monitor road construction on Interstate 81. The Troopers were operating a marked Ford Explorer equipped with a motor vehicle recording ("MVR") device, one camera facing out toward the street, and one facing in toward the backseat of the vehicle. The recording device features microphones which the Troopers were wearing. Both Troopers were in uniform.

Around 1:00 a.m., Trooper Fow was travelling southbound on Interstate 81 around mile marker 31 in South Newton Township. While she was driving in the left lane, she noticed a vehicle slightly ahead of her in the right lane that was weaving "significantly." As she tried to catch up to the vehicle, it began to weave in and out of the traffic lanes, at one point almost striking a tractor-trailer in the right lane before jerking back to the left lane. At that time, Trooper Fow began her MVR and initiated a traffic stop on the vehicle. She employed the use of lights and sirens, and the vehicle slowly came to a stop on the shoulder of Interstate 81.

Trooper Fow approached the vehicle on its driver's side, and Trooper Panosetti approached the vehicle on the passenger side. Trooper Fow noted the odor of marijuana coming from the vehicle as she approached. Trooper Fow asked the driver for his license, registration, and insurance information, at which time the driver became confused as to the location of those documents and needed to call his wife. She eventually identified the driver by his Maryland driver's license as [Appellant]. Upon speaking to [Appellant], Trooper Fow noticed that his eyes were watery and his pupils were constricted. At that point, she believed that [Appellant] was driving under the influence of either alcohol or a controlled substance.

While waiting for [Appellant] to locate his registration and insurance information, Trooper Fow noticed a burnt marijuana cigarette and two sealed bags of marijuana in the center console. She questioned [Appellant] as to those items, at which time he picked them up and handed them to Trooper Fow. She asked him if there were any other items in the vehicle, and he handed her a large amount of cash in response, which amounted to $1,800.

Trooper Fow directed [Appellant] to exit the vehicle to perform field sobriety tests. [Appellant] then responded that he had an injury to his ankle and was utilizing crutches. Because of

[Appellant]'s ankle injury, Trooper Fow was unable to perform the typical cadre of standard field sobriety tests. . . . Based on the indicators that she observed, Trooper Fow asked [Appellant] if he was driving under the influence of alcohol or controlled substances, to which [Appellant] admitted that he "had a sip" and that he "smoked" earlier in the day. [Appellant] then gave Trooper Fow consent to search his vehicle, during which she retrieved the marijuana cigarette.

While the search was being completed, [Appellant] stood outside the patrol vehicle with Trooper Panosetti. Trooper Panosetti engaged in a pat-down search of [Appellant] while Trooper Fow was searching the car with no results. After searching the car, Trooper Fow returned to the front of her patrol car where Trooper Panosetti and [Appellant] were standing. She noticed a clear plastic bag containing a white powdery substance positioned on the grill area of the patrol vehicle under the push bumper. Trooper Fow reviewed the MVR to determine where the bag had come from. She did not observe the bag prior to [Appellant] being positioned at the front of her car.

Trooper Fow placed [Appellant] under arrest, and transported him to the hospital, where [Appellant] consented to a blood draw. [Appellant]'s blood tested positive for Delta-9 THC in the amount of 12 ng/ml and for Delta-9-Carboxy-THC in the amount of 149 ng/ml. [Appellant]'s blood alcohol content was .021.

Trooper Fow then submitted the suspected controlled substances for testing. The white powdery substance was confirmed to be cocaine in the amount of 74.94 grams.

Trial Ct. Op., 6/6/23, at 1-4 (footnotes omitted).

The Commonwealth filed a criminal information on July 20, 2021, and Appellant filed a motion for a writ of *habeas corpus*, which the trial court denied following a hearing on November 30, 2021. At the conclusion of that hearing, the Commonwealth asked to "put this on for the January term. That's when [Appellant's] other DUI is on for." N.T., 11/30/21, at 18.

The cases were postponed to the March trial term, and Appellant again requested a postponement. The Commonwealth opposed, stating they had "been prepared for trial for the last two terms" and "both cases have previously been continued multiple times, with [the other case] being a defense continuance on [four] prior occasions." N.T., 3/10/22, at 2. The trial court granted Appellant two weeks to obtain documentation regarding upcoming medical appointments and directed the parties to appear on March 25, 2022, to discuss. It is unclear if that proceeding was transcribed. However, Appellant's other case resulted in a guilty plea on May 13, 2022, with sentencing scheduled for July 12, 2022. Trial at this docket was listed for July 18, 2022.

Appellant failed to appear for sentencing at the other docket, and a bench warrant was issued. Meanwhile, on July 15, 2022, Appellant's counsel and the Commonwealth appeared to discuss this trial. The Commonwealth informed the court that it was "asking to proceed *in absentia* on [July 18th]." N.T., 7/15/22, at 2. The Commonwealth cited Appellant's failure to appear for sentencing and noted that Appellant was aware of the trial date as "this was most recently continued from the March term to this term . . . we specifically went over that in the courtroom in [Appellant]'s presence, that I would be looking to try this case in July, and I am asking to try him *in absentia*." **Id.**

The parties appeared for trial as scheduled. The prosecutor informed the court that it had checked databases to see if Appellant had been

- 4 -

apprehended on the warrants. "[Appellant] is not incarcerated anywhere in the Commonwealth of Pennsylvania. I searched Maryland which is his known last residence. He's not incarcerated in Maryland. And I do know that he works in West Virginia. . . . [H]e is not incarcerated in West Virginia either." N.T., 7/18-19/22, at 11. Appellant's counsel asked for a postponement, arguing that the Commonwealth would not be burdened by rescheduling the case as the case did not involve civilian witnesses. The trial court allowed counsel until the following morning to contact Appellant or provide further information. The next morning, the court asked, "Do we have any new information that you can disclose?" *Id.* at 17. Counsel replied, "I don't have anything to say other than argument at this time." *Id.* The jury trial proceeded in Appellant's absence and he was convicted as previously stated.

Appellant was apprehended approximately three months later. At sentencing, Appellant asked to set aside the verdict. Appellant alleged that he "was dealing with family issues" concerning his mother "and was traveling up to New York." N.T., 11/8/22, at 4. The court responded, "that's a presentence motion, and that's denied because [counsel does not] present any new information except for traveling and dealing with [Appellant's] mother." *Id.* The court expressed skepticism that this "would excuse the absence or constitute good cause at this point," but afforded Appellant an opportunity to "renew it in post-sentence motion with more specific pleadings so that the Commonwealth has an opportunity to respond to that." *Id.*

On November 16, 2022, Appellant filed a post-sentence motion, renewing his request for a new trial and requesting a hearing to present evidence regarding his absence. That proceeding is not transcribed, but the trial court's opinion states that no evidence was presented. "At a hearing before this [t]rial [c]ourt, [Appellant] did not present any testimony or documentation as to his absence. He did not offer any explanation as to his absence." Trial Ct. Op. at 8.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal. The trial court filed its opinion in response and we now address Appellant's three appellate issues.

> I. Whether [Appellant]'s trial, held in absentia, violated [Appellant]'s constitutional rights under the fifth, sixth, and fourteenth amendments to the United States constitution and Article I, Section 9, of the Pennsylvania constitution?
>
> II. Whether the evidence was insufficient to prove beyond a reasonable doubt that [Appellant] was guilty of possession with intent to deliver a controlled substance?
>
> III. Whether the verdict was against the weight of the evidence so as to shock one's sense of justice?

Appellant's Brief at 7 (some capitalization omitted).

Appellant's first issue contends that the trial court erred in trying him *in absentia*. *See* Appellant's Brief at 21. Appellant discusses other cases upholding such trials, suggesting that those precedents signal that a trial *in absentia* is proper only "where a defendant's *repeated* failure to appear, even after *numerous* efforts were made to secure their presence, threatened the

administration of justice." *Id.* at 23 (emphases in original). Appellant argues that he "took no affirmative actions, such as cutting off an ankle monitor, to suggest that his absence was willful. Nor did [Appellant] repeatedly fail to appear" as he had been present at all prior listings. *Id.* at 26. Appellant also argues that the Commonwealth made "very few efforts . . . to inquire as to why [Appellant] was not present." *Id.* at 26.

Appellant also argues that, in addition to a repeated failure to appear, our Supreme Court "has considered the difficulty of rescheduling a trial and the burden doing so would place upon the government[.]" Appellant's Brief at 25. Appellant agrees that "these considerations have not been explicitly adopted by our Supreme Court, [but] it has acknowledged them as reasonable and logical issues for a trial court to weigh in deciding whether to proceed *in absentia*." *Id.* (citing *Commonwealth v. Wilson*, 712 A.2d 735, 737 (Pa. 1998)). Appellant contends that those factors weigh in his favor, as the witnesses were all "Commonwealth employees" and rescheduling would be relatively simple and not burdensome. Appellant's Brief at 25.

It is well-established Appellant had a constitutional right to be present for trial: "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). Federal law bars trial *in absentia* if the defendant is not present for the beginning of trial. "The language, history, and logic of [Federal Rule of Criminal Procedure 43] support a straightforward interpretation that prohibits the trial *in absentia* of a

- 7 -

defendant who is not present at the beginning of trial." ***Crosby v. United States***, 506 U.S. 255, 262 (1993). In contrast, Pennsylvania law straightforwardly permits trial if the defendant's absence is without cause. "The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence." Pa.R.Crim.P. 602.

In ***Commonwealth v. Sullens***, 619 A.2d 1349 (Pa. 1992), our Supreme Court interpreted this language and held that the trial court did not err in holding a bench trial in the defendant's absence. Sullens argued that "the record failed to establish that he had been notified of the trial date." ***Id.*** at 1352. The Court disagreed.

> Although [Sullens] characterizes the colloquy as reflecting "considerable" doubt that he had received notice of trial, the record establishes that there was very little doubt indeed. The judge's recollection and defense counsel's statements provided an adequate basis for the court to make a factual finding that [Sullens] had notice of his trial date. The only uncertainty was due to the fact that defense counsel could not find a copy of his letter to [Sullens] conveying the information.
>
> In any event, we need not review the sufficiency of the evidence at the time the court found [Sullens] to be absent without cause and decided to proceed with a trial *in absentia*. The record establishes beyond any doubt that [Sullens] had notice of his trial, due to his admission at sentencing that he knew of his February 27, 1989 trial date and that he willfully decided to absent himself without cause or justification. Accordingly, the trial court did not err in conducting a bench trial in [Sullens]'s absence.

***Id.*** at 1352-53.

We note that ***Sullens*** was decided by a six-Justice Court, and Justice Flaherty's opinion was joined by Justices Larsen and Nix. Justices Zappala

and Cappy each filed dissents, joining each other. Justice Papadakos' concurring opinion stated in full:

> I join with the majority, but write separately to emphasize that no harm is done to a defendant whose case is heard in his absence because good cause has not been shown to the trial judge for the absence when, in fact, good cause exists for the absence. At sentencing, when the defendant appears, if he can establish that he had good cause for his absence at trial, he would be entitled to a new trial.

*Id.* at 1353 (Papadakos, J., concurring).

With the foregoing in mind, we initially deem waived any part of Appellant's claim arguing that his constitutional rights were violated. The United States Supreme Court's decision in *Crosby* explicitly refrained from deciding whether a trial may proceed in the accused's absence: "Because we find Rule 43 dispositive, we do not reach Crosby's claim that his trial *in absentia* was also prohibited by the Constitution." *Id.* at 262. Additionally, in *Commonwealth v. Johnson*, 734 A.2d 864, 867 (Pa. Super. 1999), a panel of this Court stated: "[A] review of *Sullens* indicates that, contrary to [Johnson]'s claim, the Supreme Court did in fact consider 'constitutional limitations.'" Appellant has not developed an argument showing that subsequent caselaw has cast doubt on these holdings, and we are bound by them. Nor has he offered an argument that it is unconstitutional to proceed *in absentia* when the accused fails to appear at the start of trial. Accordingly, we conclude that the only preserved argument concerns whether the trial court's decision satisfied the rule-based standard.

*Sullens* did not dictate what standard of review applies to a trial court's determination that the failure to appear was without cause. In *Wilson*, 712 A.2d at 737, our Supreme Court stated: "Courts in this Commonwealth have consistently held that a trial court may, in its discretion, conduct a trial in absentia when the defendant absconds without cause after the trial commences." As developed in *Crosby*, there is arguably a constitutionally significant distinction between permitting a trial to begin in the accused's absence versus continuing the trial when the defendant absconds during those proceedings. "As a general matter, the costs of suspending a proceeding already under way will be greater than the cost of postponing a trial not yet begun." *Crosby*, *supra* at 261. In the absence of a developed argument supporting a constitutional limitation on Rule 602 and its authority to conduct a trial *in absentia*, we conclude that an abuse of discretion standard applies.

Turning to that issue, we find no abuse of discretion. It is not disputed that Appellant had personal notice of the trial date. The *Sullens* case indicates that this is itself sufficient, as in that case there was "an adequate basis for the court to make a factual finding that [Sullens] had notice of his trial date." *Sullens*, 619 A.2d at 1352. Appellant is correct that the *Wilson* Court approvingly stated that trial courts should consider other factors, such as difficulty of rescheduling. *Wilson*, 712 A.2d at 739. But this was not a mandate to do so. Thus, the mere failure to appear alone justifies the trial court's ruling.

Moreover, Appellant assumes that the Commonwealth bore the burden of establishing that his absence was without cause and claims that it failed to do so. This argument suggests that the trial court abuses its discretion if it holds a trial *in absentia* regardless of whether the defendant knew of his trial date. The lead opinion in **Sullens** rejected this argument, as the Court stated that the sufficiency of the evidence at the time the court decided to proceed was irrelevant since it was clear Sullens had notice. **See Sullens**, 619 A.2d at 1352.

As this issue implicates Justice Papadakos' concurrence in **Sullens**, we will address this point. In **Commonwealth v. Bond**, 693 A.2d 220 (Pa. Super. 1997), a case where the trial court proceeded in the defendant's absence when he left after the trial started, we stated that the burden is on the defendant. "It is [Bond]'s burden to establish that his absence was 'with cause.'" **Id.** at 224 (quoting **Commonwealth v. Doleno**, 594 A.2d 341 (Pa. Super. 1991)). **Accord Commonwealth v. Johnson**, 764 A.2d 1094, 1097 (Pa. Super. 2000) (trial proceeded *in absentia* after defendant stopped attending trial; "Initially, we observe that it is *[Johnson]'s* burden to establish that his absence was *with cause;* it is not the Commonwealth's burden to establish that [Johnson] did not have a good reason for failing to appear.") (emphases in original). While those cases involve a defendant who was present at some point, the **Sullens** Court suggests that the burden flips to the defendant once the Commonwealth establishes that the defendant had notice of the actual trial date. Justice Papadakos' concurring opinion placed the

burden on the defendant to show why his absence was justifiable. ***But see***

***Commonwealth v. Hill****, 737 A.2d 255, 259 (Pa. Super. 1999) (stating, where

trial proceeded after accused failed to appear for trial at all, that the

Commonwealth must demonstrate "by a preponderance of the evidence that

the defendant is absent 'without cause' and that he knowingly and intelligently

waived his right to be present" before conducting a trial *in absentia*);

***Commonwealth v. DeCosta***, 197 A.3d 813, 817 (Pa. Super. 2018) (applying

***Hill*** and granting new trial in case where defendant had been present for trial

but failed to appear for deliberations due to hospitalization).

To the extent that our caselaw is in conflict on this point, we find that

the Commonwealth met its burden. Appellant had notice of the July trial date

and the record establishes that he accepted a guilty plea in May. Appellant

then failed to show for sentencing at the other criminal docket, which was less

than week before this trial was to commence. Unlike ***DeCosta***, ***supra***, where

the defendant's hospitalization supplied an explanation for his absence,[2]

Appellant's failure to appear could logically be deemed to represent a

continued flight from the authorities. It is unclear what more the

Commonwealth could do at that point to establish that Appellant's failure to

appear was not justifiable. Notably, the trial court afforded Appellant's

counsel an additional day to locate Appellant once he failed to appear for trial.

---

[2] The trial court in ***DeCosta*** accepted that the defendant had been hospitalized, however, the court relied "on hearsay speculation by the family that they *suspected* [DeCosta]'s hospitalization resulted from a suicide attempt." ***DeCosta***, 197 A.3d at 818 (emphasis in original).

In today's day and age, where virtually everyone has access to a smartphone and email, it strains credulity to believe that Appellant could not have apprised the court or his counsel of any emergency preventing his appearance.

Alternatively, we conclude that Appellant has failed to show that the ruling should be reversed. Even if we accept that the foregoing evidence was insufficient to establish a good reason for Appellant's absence, we agree with Justice Papadakos' concurring opinion in **Sullens** that a defendant can establish good cause after the trial has occurred. The trial court granted Appellant's post-sentence request for an evidentiary hearing to present evidence concerning his failure to appear. Appellant declined to present evidence at that hearing, and thus cannot now complain that there was not good cause.

Appellant's second issue challenges the sufficiency of the evidence to convict him of PWID. **See** Appellant's Brief at 29. Our standard of review is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth. v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014).

In his second issue, Appellant challenges two aspects of his PWID conviction: whether he possessed the drugs and, if so, whether that possession was with the intent to deliver. Beginning with possession, Appellant argues that the Commonwealth failed to show that he constructively possessed the cocaine. "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012). The doctrine "usually comes into play when police find contraband somewhere other than on the defendant's person." *Commonwealth v. Hall*, 199 A.3d 954, 961 (Pa. Super. 2018). To establish constructive possession, the Commonwealth must show "the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa. Super. 2003) (citation omitted). "[M]ere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Commonwealth v. Parrish*, 191 A.3d 31, 37 (Pa. Super. 2018).

Because the evidence was not found on his person, the Commonwealth was required to prove constructive possession. On that point, Appellant argues that "no evidence of record suggested that he was aware of the substance's presence and therefore, could not have intended to control it." Appellant's Brief at 30. He maintains that the Commonwealth only established mere presence. *Id.*

Appellant's argument is limited to the cocaine where it was found. However, this is not a situation where the contraband had no obvious known possessor before its discovery. A rational fact-finder could credit Trooper Fow's testimony that the contraband was not on her vehicle prior to Appellant's presence, and that any drugs left from an earlier interaction would have fallen off while driving. Thus, the cocaine had to have come from Appellant or one of the troopers. Granting all inferences in favor of the Commonwealth as verdict winner, a rational fact-finder could conclude that Appellant placed the drugs there, presumably in an attempt to hide them from the investigators. Having previously been in physical possession of the item, the requisite dominion and control is satisfied by proof of prior possession. *See Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa Super. 2008) (concluding that evidence was sufficient to establish constructive possession where officer saw Hutchinson "walk to a pavilion and place his hand in the rafters where Officer Wise later recovered the crack cocaine").

Turning to whether Appellant possessed the drugs with an intent to deliver, the following precepts apply.

- 15 -

It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver.

In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver.

Notably, "if, when considering only the quantity of a controlled substance, it is not clear whether the substance is being used for personal consumption or distribution, it then becomes necessary to analyze other factors."

*Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008) (quoting *Commonwealth v. Brown*, 904 A.2d 925, 931-32 (Pa. Super. 2006)). Additionally, expert testimony is relevant evidence. *Commonwealth v. Robinson*, 582 A.2d 14, 17 (Pa. Super. 1990) ("The jury was free to accept or reject the opinion testimony of the expert witness. If accepted by the jury, as it clearly was, it provided an adequate basis upon which to conclude that the Commonwealth proved the intent to deliver element of the crime charged.").

Appellant argues that the Commonwealth failed to show that the drugs were not for personal use, relying largely on *Commonwealth v. Smagala*, 557 A.2d 347, 348 (Pa. Super. 1989). There, we determined that the Commonwealth failed to show that the drugs were not for personal use and discharged the PWID conviction.

Instantly, the following evidence was seized from the garage and [Smagala]'s person: 0.8 gram of cocaine, a razor blade, a rolled up twenty dollar bill, a small amount of bicarbonate of soda, test tubes, a glass pipe, wire mesh screens, hundreds of burnt

- 16 -

matches, hundreds of used "Klennex," four index cards with names and numerical amounts written on them ("tally sheets"), two bundles of used, reusable glassine baggies and $834.00 in cash. Also, a loaded handgun was found under the seat in the appellant's locked vehicle.

A common sense review of the facts reveals unequivocally that [Smagala] possessed the cocaine for personal use, not distribution. [Smagala] possessed only 0.8 of a gram of cocaine, a small amount consistent with personal use. Expert testimony at trial indicated that test tubes and bicarbonate of soda are used to convert cocaine in the powder form into cocaine in the rock form, "crack." The cocaine rock is then smoked in a glass pipe inside of which is a wire mesh screen. Instantly, the garage work bench was covered with hundreds of burnt matches and [Smagala] possessed all the necessary tools to create and smoke "crack." Those facts are consistent with personal use of cocaine. Also, a rolled up twenty dollar bill and a razor blade were found on [Smagala]'s person. The Commonwealth's expert testified that the razor blade was used to divide the cocaine into "lines" and then the rolled currency was used to inhale those lines of cocaine through the user's nostrils. Also, numerous used "Klennex" were found on top of the work bench where the glass pipe was located. Again, those facts are consistent with personal use. The totality of the evidence leads us to the unavoidable conclusion that [Smagala] intended either to smoke the cocaine or inhale it.

*Id.* at 352.

Appellant submits that the **Smagala** case involved a "profuse amount of direct evidence indicative of an intent to deliver — including expert testimony that the evidence was consistent with distribution," yet the panel nonetheless discharged the conviction. Appellant's Brief at 36. Appellant reasons that "if such copious amounts of direct evidence towards intent to deliver can be discredited, solely because of the small quantity . . . the alternative should equally apply where the only evidence the Commonwealth can present . . . is the sheer quantity of the drugs found." *Id.* at 36-37. We

- 17 -

disagree. First, as quoted *supra*, the **Smagala** Court concluded that the various items were used to convert powder cocaine into crack cocaine. Thus, the Court did not deem the evidence insufficient solely due to the small amount. "[I]n **Smagala**, the small amount seized was taken along with all the necessary tools a drug user ordinarily would need to consume the cocaine either by inhaling it or converting it into crack for smoking." **Commonwealth v. Harper**, 611 A.2d 1211, 1217 (Pa. Super. 1992). Second, a small volume of drugs paired with items indicative of drug dealing lends itself to a conclusion that the drugs are for personal use far more readily than it does in a scenario where a large quantity is paired with an absence of items indicative of drug dealing. A small quantity is consistent with personal use in a way that a large quantity is not.

In this case, the Commonwealth's expert, Corporal James Sohns, testified that, for personal cocaine use, "a gram would be a lot, more like probably half a gram." N.T., 7/18-19/22, at 226. Anything above 50 grams of cocaine "is considered a high level drug dealer or trafficker[.]" **Id.** at 228. The corporal also cited the lack of "use" paraphernalia, which is a relevant factor. **Commonwealth v. Torres**, 617 A.2d 812, 814 (Pa. Super. 1992) ("In . . . **Smagala** and [**Commonwealth v**.] **Gill**, [415 A.2d 2 (Pa. 1980)], unlike the instant case, the appellants possessed use paraphernalia, which indicated an intent to consume rather than distribute the controlled substances involved."). Corporal Sohns added that the $1,800 in cash was "another factor . . . that could indicate that this was possession with intent to

deliver" the cocaine. *Id.* at 230. We conclude that this expert testimony and the weight of the drugs was sufficient to establish the drugs were possessed with an intent to deliver.

Appellant's third and final claim challenges the weight of the evidence. Our standard of review is well-settled.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *[Commonwealth v.] Brown*, [648 A.2d 1177,] 1189 [Pa. 1994]. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, . . . 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). A new trial should be granted if "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 752.

Appellant argues that the piece of evidence entitled to greater weight is the MVR footage, which captured Trooper Panosetti's pat-down of Appellant and Appellant retrieving his crutches and hoodie from the trunk during the stop. Appellant argues that the MVR footage shows that it was unlikely that he was able to retrieve the cocaine without the troopers noticing. We

disagree. As the Commonwealth explains in its discussion of the sufficiency of the evidence, the MVR did not capture everything.

> Because . . . Appellant and Trooper Panosetti were standing near the grill of the patrol car, the MVR was prevented from capturing the Appellant's activity from the waist down. However, the jury observed MVR footage of Appellant bending over to put a pair of sweatpants on, returning to a seated position on Trooper Fow's vehicle, and then standing and adjusting the sweatpants again moments later.

Commonwealth's Brief at 25.

The trial court, which observed the MVR footage, determined that the jury's verdict did not shock its conscience. Additionally, Appellant's argument does not account for where the cocaine came from if not him. We discern no abuse of discretion in the trial court's denial of his weight claim. Therefore, his final claim is unavailing.

Judgment of sentence affirmed.[3]

Judge Dubow joins the Memorandum.

Judge McLaughlin Concurs in the Result.

---

[3] On November 15, 2023, Appellant filed a *pro se* application for bond. On December 4, 2023, this Court forwarded the request to counsel. **See Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011) ("[W]e reiterate that the proper response to any pro se pleading is to refer the pleading to counsel, and to take no further action on the pro se pleading unless counsel forwards a motion.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/14/2023