359 A.2d 407
**COMMONWEALTH of Pennsylvania**
v.
**Carl T. HARRIS, Appellant.**

Superior Court of Pennsylvania.
June 28, 1976.

John J. Dean, Anthony J. Lalama, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

On April 17, 1975, appellant was found guilty by a judge sitting without a jury of possession of a controlled

substance (heroin) [1] and possession with intent to deliver a controlled substance (heroin).[2] Motions in arrest of judgment and for a new trial were denied on June 12, 1975, and appellant was sentenced to a term of imprisonment of eleven and one-half months to twenty-three months on the conviction of possession with intent to deliver. Sentence on the conviction of simple possession was suspended.

Appellant raises two points of alleged error on appeal. However, appellant's argument that the lower court erred in admitting opinion testimony was not raised in post-trial motions and we must, therefore, consider it waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). We find appellant's remaining argument, that the evidence was insufficient to sustain the conviction of possession with intent to deliver, to be without merit and we will, therefore, affirm the judgments of sentence of the lower court.

The facts indicate that on November 22, 1974, at approximately 9:20 p. m., Pittsburgh Police Detective Ralph McDaniel received information from a reliable confidential informant that appellant was carrying "a bunch of stuff" and was on his way to meet several other persons. Detective McDaniel and his partner, accompanied by the informant, drove to Centre Avenue in Pittsburgh where the informant pointed out the appellant standing in an alley near a white Buick automobile. After the informant left the officers, they approached appellant. However, appellant got into the rear seat of the Buick and it was driven away. The officers pursued by car and stopped the Buick after four or five blocks. Detective McDaniel noticed appellant leaning forward and putting his hands between his legs as if he was trying to hide something under the seat. When

1. Act of April 14, 1972, P.L. 233, No. 64, § 13 (35 P.S. § 780–113 (a)(16)).
2. Act of April 14, 1972, P.L. 233, No. 64, § 13 (35 P.S. 780–113 (a)(30)).

the detective examined the interior of the car, he found a bag containing sixteen half-spoons of heroin on the floor between appellant's legs. A further search of the Buick at the police station revealed two measuring spoons in the glove compartment and a small scale in the trunk. The Buick was registered to the driver, one of appellant's co-defendants.

It is elementary that "[e]vidence is sufficient to support a conviction if, accepting as true all the evidence and all reasonable inferences arising therefrom which (if believed) the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he was convicted. (citations omitted)." *Commonwealth v. Kinnard*, 230 Pa.Super. 134, 143, 326 A.2d 541, 545 (1974). When we so view the evidence in the case at bar, we find it sufficient to support the conviction.

Our supreme court has held that, under the proper facts and circumstances, possession of a sufficient quantity of a narcotic drug will permit the inference that the possessor had an intent to deliver the drug. *Commonwealth v. Santiago*, 462 Pa. 228, 340 A.2d 440 (1975). Although the quantity involved in *Santiago* was considerably greater than that in the instant case, we feel the facts here bring this case under the *Santiago* reasoning.[3]

**3.** In *Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975), our court affirmed a conviction for trafficking in narcotic drugs under the Act of Sept. 26, 1961, P.L. 1664, § 4 (35 P.S. § 780-4(q)). In that case, although there was no evidence of an actual sale, and although the appellant had only fifteen half-spoons of heroin in his possession at the time of his arrest, our court felt that this amount, coupled with the other factors present, was sufficient for conviction. While *Hill* dealt with a violation under the old drug act, since repealed, the anology between that case and the case at bar is sufficient for us to conclude that the amount involved is not necessarily crucial to establishing an inference of possession with intent to deliver, if the proper other facts are present. In the case at bar, the detective's expert testimony supplied sufficient other facts to support the inference.

.We are persuaded by the testimony of the arresting officer, Detective McDaniel, called by the Commonwealth as an expert witness. Detective McDaniel stated that he had been assigned to the narcotics division for nine years, and that he had made many arrests for narcotics violations during the year previous to this arrest. He was well acquainted with the drug culture and showed an in-depth knowledge of the street value of drugs and of the habits of drug users. Detective McDaniel testified, on direct examination:

"*BY MR. ADAMS:* (Assistant District Attorney)

Q. Is there a normal user of heroin that you have found in your work as a narcotics police officer?

A. Yes.

Q. Could you describe that normal user for us?

A. The normal user I came in contact, usually, had one or two, in the old days, it was small capsules; this day, one or two, possibly three, half spoons. This is for a guy that's gonna use it for hisself.

Q. Okay.

Now, could you relate to us how you made that observation as to the user that you have just described?

A. I made it based on the arrests that I made, the number of arrests.

Q. Approximately, how many arrests of users have you made in the year preceding November 22, 1974,—

A. Just—

Q. —Approximation?

A. Just in that one year?

Q. Yes.

A. It had to be over fifty, I know, probably way over fifty.

Q. And were there many more in the nine years that you have been a narcotics officer?

A. More than I care to remember.

Q. Okay.

Now, have you made arrests concerning people who were subsequently convicted of possession with intent to deliver a controlled substance,—

A. Yes.

Q. —namely, heroin?

A. Yes, sir.

Q. In the year preceding November 22, 1974, could you give me an approximation of how many arrests you have made of people who were subsequently convicted of possession with intent to deliver a controlled substance?

A. That's a more difficult answer. It's several dozen.

Q. Now, in the years that you were a police officer, prior to that year that I just mentioned, the eight previous years, approximately, how many arrests were made concerning people who you arrested that were subsequently convicted of possession or possession with intent to deliver?

A. In the hundreds. As I say, I don't keep accurate—It was well in the hundreds.

Q. Now, based on your prior arrests, could you give us an opinion as to the amount that Mr. Harris contained? Could you give us an opinion as to whether or not this particular individual had it for his own use or whether he had possession of it with intent to deliver?

*MR. SHULGOLD:*

This is objected to, if the Court please. I do not think the witness is capable of answering that question.

MR. ADAMS:

Well, I think, I am entitled to ask him an opinion.

MR. SHULGOLD:

It would be sheer speculation.

MR. ADAMS:

I think, I have qualified him as an expert.

THE COURT:

He has testified now.

MR. SHULGOLD:

He is not a user.

THE COURT:

No, but to hear from a doctor does not necessarily have to be sick, something about a disease to which he is testifying.

Objection is overruled.

BY THE WITNESS:

A. Based on my experience and arrests and information that I know about narcotics, the amount involved here is sixteen would indicate to me that because of the amount it would not be for an independent use of that person. It would indicate to me and lead me to believe that this amount was used for another purpose, and that being to sell or distribute or what have you, not for personal use.

BY MR. ADAMS:

Q. Okay. Thank you." (NT 84–87).

The lower court considered the detective's testimony that the amount in appellant's possession was more than would be carried by a person for his personal use, and found appellant guilty of possession with intent to deliver. "The law is well settled that it is the exclusive province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded their testimony. . . . We will not disturb such a finding on ap-

peal unless it is manifestly erroneous. (citations omitted)." *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972). We cannot say that this finding was "manifestly erroneous."

The judgments of sentence are affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge (dissenting).

Appellant's sole contention is that the Commonwealth's evidence was insufficient to prove that he possessed sixteen "half-spoons" [1] of heroin with intent to deliver.

The facts, with minor exceptions, are undisputed: At 9:20 p. m., November 22, 1974, Ralph McDaniel, a plainclothes police officer employed by the Pittsburgh Police Department, received a tip from a confidential informant that appellant was carrying "a bundle of stuff wrapped in silver foil" and was going down the street to "meet some dudes." McDaniel and Detective Norman Stewart picked up the informant and drove to Centre Avenue. The informant pointed out the appellant, who was standing near a white Buick parked just off Centre Avenue. After dropping off the informant, the police returned to the parked car. As the police approached, appellant got into the rear of the vehicle and was driven away. The police followed the car for several blocks before they stopped it. As they approached, McDaniel observed appellant place something beneath the rear seat. McDaniel's search netted a brown bag containing sixteen "half-spoons" of heroin. A subsequent search at police headquarters uncovered two measuring spoons in the glove compartment and a small scale in the trunk of the Buick. The car was registered to the driver, one of appellant's two co-defendants.

1. See *Commonwealth v. Hill,* 236 Pa.Super. 572, 346 A.2d 314, 315 (1975): ". . . a 'half-spoon' of heroin consists of about 5 grams of the substance and sells for $25.00 on the street."

14

On April 17, 1975, appellant's motion to suppress the physical evidence was denied; after a waiver of jury trial, the same court which heard the suppression motion found appellant guilty of possession of a controlled substance [2] and possession with intent to deliver.[3] On June 25, 1975, appellant was sentenced to a term of imprisonment of 11½ to 23 months on the charge of possession with intent to deliver; sentence was suspended on the possession charge.

The only issue on appeal is whether the Commonwealth's evidence was sufficient to prove the requisite intent under 35 P.S. § 780–113(a)(30). The appellant admits that he was properly found guilty of simple possession under § 780–113(a)(16).

There is no question that the Commonwealth must prove every essential element of a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975). Further, the language of § 780–113(a)(30) makes clear that the Commonwealth must prove that the possessor *intended* to deliver the controlled substance: "(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: . . . (30) . . . the manufacture, delivery, or *possession with intent to* manufacture or *deliver*, a controlled substance by a person not registered under this act . . . ." (Emphasis added). I recognize that when an appellate court reviews a claim of sufficiency, it must accept as true all the evidence, with all reasonable inferences therefrom, upon which the factfinder could properly have based its verdict. *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d

2. Act of April 14, 1972, P.L. 233, No. 64, § 13, imd. effective; as amended 1972, Oct. 26, P.L. 1048, No. 263, § 1, imd. effective; 1974, Dec. 30, P.L. 1041, No. 340, § 1, imd. effective; 35 P.S. § 780–113(a)(16).

3. Act of April 14, 1972, supra; 35 P.S. § 780–113(a)(30).

910 (1973). At the same time, however, such inferences cannot be based on mere suspicion or surmise. *Commonwealth v. Simpson*, 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. Clinton*, 391 Pa. 212, 137 A.2d 463 (1958). Finally, if proof of an essential element is based on circumstantial evidence, "the evidence must be such 'as reasonably and naturally to justify an inference of the guilt of the accused . . . and of such volume and quality as to overcome the presumption of innocence . . . .'" *Commonwealth v. Townsend*, 428 Pa. 281, 286, 237 A.2d 192, 195 (1968).

In the instant case, we start with the fact that appellant possessed only sixteen "half-spoons" of heroin. The Commonwealth's witness, Officer McDaniel, testified that a normal user of heroin would need from one to three "half-spoons" a day, but that a heavy user would consume much more than that. The Commonwealth introduced the laboratory report containing the results of tests conducted on the heroin found beneath the back seat of the Buick:

"1. Four glasseen [sic] envelopes which held a total of 1.4330 grams of tan speckled powder. The powder in each envelope contained heroin.

"2. Twelve aluminum foil packets which held a total of 3,4968 grams of tan speckled powder. The powder in each packet contained heroin."

The Commonwealth introduced no testimony concerning the purity of the heroin. If the heroin were relatively pure, it would tend, at least, to indicate that the drugs had just entered the drug traffic, and because users seldom receive unadulterated heroin, the likelihood that appellant was a trafficker would be thereby increased.[4]

---

4. The Commonwealth's witness testified that purity is extremely relevant in deciding how many "half-spoons" a user requires:
"Q. [by defense counsel]: . . . a heavy user with that kind of habit, a heavy habit, between a hundred and a hundred and a half a day would be using four to six packets a day, half spoons?

The only other proof of the intent to deliver was the police officer's belief that a person found with sixteen "half-spoons" would not be using them for personal use. Further, Officer McDaniel testified that he did not know whether the appellant was an addict or a user of heroin. That is, the Commonwealth did not advance the theory that appellant was a non-user, thereby increasing the probability that he possessed the drugs because he was engaged in drug traffic.

I have found no case in Pennsylvania which announces a fixed line to distinguish between mere possession and possession with intent to deliver. In *Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975), this Court sustained a conviction for trafficking in drugs based on possession of fifteen "half-spoons". The facts of *Hill* are readily distinguishable and point up the paucity of the evidence in the instant case: "Turning to the facts of our case it is also clear that sufficient evidence was produced at trial so as to enable the jury to convict on the charge of 'trafficking.' Both defendants were found with substantial quantities of heroin on their persons. The heroin was packaged in glassine bags and appellants were in the process of transferring the neatly packaged substances from the residence into the vehicle at the time of their arrest. The residence itself was found to contain a large quantity of glassine bags which are commonly used to package and sell narcotics. Several measuring spoons were also found on the premises. A quantity of quinine was found on the person of Izear Hill. Both defendants had large amounts of cash on their person." 236 Pa.Super. at 573–576, 346 A.2d at 315–16.[5]

"A. There again, . . . , I can't really answer that question because a lot comes into play here, what the percentage of the stuff is; and, well, if it would be a low percentage, I could possibly agree with you; if it's a high percentage, I cannot agree with you."

5. Despite the quantity of evidence in *Hill*, the conviction was affirmed only by a divided court.

Although the police found two measuring spoons and a scale in the Buick in the instant case, neither was within appellant's possession or control. No evidence links appellant with those items, and they were properly introduced at trial only against appellant's co-defendants. See, *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971). It is equally plausible that appellant had purchased his narcotics from his co-defendants as it is that all three men were involved together in illicit drug traffic.

Thus, appellant stands convicted of possession with intent to deliver on the police officer's speculation concerning what the normal drug addict's daily usage is and on the fact that he possessed sixteen "half-spoons" of heroin. Even based on the Commonwealth's evidence, a heavy heroin user might consume sixteen "half-spoons" in a matter of two or three days. Without further proof of the degree of appellant's use, possession of sixteen bags simply does not prove beyond a reasonable doubt that appellant intended to deliver the heroin. It is at least as likely that he possessed the drugs for his personal use. I would hold that proof of possession of a quantity of heroin which could be consumed by a single person in two to three days, without more, is insufficient to prove an intent to deliver.

Therefore, I would reverse appellant's conviction under § 780–113(a)(30) and remand for resentence on the conviction for possession under § 780–113(a)(16).

SPAETH, J., joins in this dissenting opinion.