580 A.2d 341

**COMMONWEALTH of Pennsylvania**

v.

**John Donald ARIONDO, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 18, 1989.

Filed Aug. 31, 1990.

Joseph G. Kanfoush, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com.

Before CAVANAUGH, WIEAND and KELLY, JJ.

WIEAND, Judge:

John Donald Ariondo was tried nonjury and was found guilty of possession of cocaine, a controlled substance, and possession of cocaine with intent to deliver. Post-trial motions were filed and, following argument thereon, were

denied. Ariondo was sentenced to serve a term of imprisonment for not less than two (2) years nor more than ten (10) years on the conviction for possession with intent to deliver.[1] On direct appeal from the judgment of sentence, Ariondo asserts that: (1) the trial court erred by refusing to suppress evidence seized from his home pursuant to a search warrant where, prior to obtaining the warrant, the police had illegally entered the residence without consent and had conducted a warrantless search in violation of his Fourth Amendment right to be free from unreasonable searches and seizures; and (2) the evidence presented at trial was insufficient to establish that he possessed cocaine with intent to deliver it.

In reviewing the denial of appellant's motion to suppress the evidence seized from his home, we must

> 'determine whether the factual findings of the [suppression] court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge,* 305 Pa.Super. 386, 451 A.2d 701 (1982).'

*Commonwealth v. Schneider,* 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989), quoting *Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 112, 480 A.2d 1209, 1211 (1984). See also: *Commonwealth v. Hughes,* 521 Pa. 423, 438, 555 A.2d 1264, 1271–1272 (1989); *Commonwealth v. Stark,* 363 Pa.Super. 356, 365, 526 A.2d 383, 388 (1987).

When viewed in this manner, the pertinent facts in the instant case may be summarized as follows. Acting on information from a confidential informant that appellant had been receiving shipments of cocaine via United Parcel Service (UPS), detectives of the Penn Hills Police Depart-

---

1. No further penalty was imposed on the conviction for simple possession.

ment contacted UPS and requested that they be informed of any packages addressed to appellant. On May 5, 1988, Jesse Holman, a UPS security supervisor, notified Detectives Robert Frank and George Sens of the Penn Hills narcotics unit that a package addressed to Ariondo Electric was destined for appellant's residence at 560 Springdale Drive, Penn Hills, Allegheny County. The package was brought to the Penn Hills police station where a trained, drug sniffing canine, by scratching and biting the package, signalled that drugs were present. With this information, police were able to obtain a search warrant authorizing them to open the package. When they did so, they found, inter alia, a plastic bag containing approximately five ounces of a white, rocky powder, which tested positive for cocaine. After this discovery, police removed the bulk of the cocaine, 126.7 grams, to be held as evidence. The remaining 12.6 grams of cocaine were placed back into the package, and the package was resealed. Detectives Frank and Sens then began preparing an affidavit for a warrant to search appellant's residence. Inexplicably, Frank and Sens believed that they would not have sufficient probable cause to obtain a search warrant until after the package had been delivered.

Later the same evening, at or about 8:00 p.m., police established a surveillance of appellant's house. The package was delivered by UPS security supervisor Holman and Officer Jeffrey Perz of the Penn Hills Police Department about 8:20 p.m. Appellant answered the door and accepted the package. After the delivery had been made, police waited ten to fifteen minutes until they believed the package had been opened. Because they feared that appellant would notice that the bulk of the cocaine which he expected was missing, the police decided to enter and secure the residence until a search warrant was obtained so that the evidence would not be destroyed. Thus, Detective Frank knocked on the door and identified himself as a police

officer. The door was opened by Edward Ferraro,[2] a friend of the appellant who was staying at the house. Police informed him that they were securing the residence because they had reason to believe that narcotics were present. The police then entered the house and, upon hearing noises coming from the back of the house, proceeded to the master bedroom at the rear of the one story, single family dwelling, where they found appellant. There, in plain view, they also observed the open package which had been delivered a short time before, along with various items of drug paraphernalia. After finding appellant, the police conducted a limited protective sweep of the remainder of the house to determine whether other persons were present and to ensure their own safety.

After securing the residence and determining that only appellant and Ferraro were in the house, police informed appellant and Ferraro that a search warrant would be obtained and asked for their consent to search the house. Consent was refused. Therefore, the police remained with appellant and Ferraro in the living room of the house while Detectives Frank and Sens went to the magistrate's office to obtain a search warrant. When Frank and Sens returned, the search warrant was executed, and the evidence was seized. No evidence had been seized by police during the prior warrantless sweep of the house.

"The Fourth Amendment to the Constitution of the United States 'protects people from unreasonable government intrusions into their legitimate expectations of privacy.' " *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978), quoting *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538, 546 (1977). See also: *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Commonwealth v. Williams*, 380 Pa. Super. 227, 230, 551 A.2d 313, 314 (1988); *Commonwealth v. Rispo*, 338 Pa.Super. 225, 230, 487 A.2d 937, 939 (1985).

**2.** Ferraro was tried with appellant, but, prior to the conclusion of trial, the charges against him were nol prossed upon motion of the Commonwealth.

In general, the courts have viewed a person's residence as an area which is given the greatest protection by the Fourth Amendment. Thus, the United States Supreme Court has said:

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York,* 445 U.S. 573, 589–590, 100 S.Ct. 1371, 1381–1382, 63 L.Ed.2d 639, 653 (1980). See also: *United States v. Velasquez,* 626 F.2d 314, 317 (3d Cir.1980); *Commonwealth v. Conn,* 377 Pa.Super. 442, 446, 547 A.2d 768, 770 (1988). "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Commonwealth v. Flewellen,* 475 Pa. 442, 446, 380 A.2d 1217, 1220 (1977).

"As a general rule, a search or seizure without a warrant is deemed unreasonable for constitutional purposes." *Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101, 106 (1978), citing *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971). See also: *Commonwealth v. Chandler,* 505 Pa. 113, 122, 477 A.2d 851, 855 (1984); *Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 51, 512 A.2d 1199, 1204 (1986), *allocatur denied,* 515 Pa. 573, 527 A.2d 535 (1987), *cert. denied,* ——

U.S. ——, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989); *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 27, 461 A.2d 616, 618 (1983).

> [W]arrantless searches and seizures are per se unreasonable "subject only to a few specifically established and well-delineated exceptions." E.g., *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, [2031–32], 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, [514], 19 L.Ed.2d 576 (1967); *see Commonwealth v. Shaffer*, 447 Pa. 91, 103, 288 A.2d 727, 734 (1972), *cert. denied*, 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972); *Commonwealth v. Cockfield*, 431 Pa. 639, 644, 246 A.2d 381, 383 (1968). Furthermore, in this jurisdiction the burden is upon the Commonwealth to prove by a preponderance of the evidence that a search or seizure did not violate the fourth amendment.

> *Commonwealth v. Ravenell*, 448 Pa. 162, 166, 292 A.2d 365, 367 (1972); *Commonwealth v. Mazzella*, 231 Pa.Super. 247, 250, 331 A.2d 784, 785 (1974); *see* Pa.R.Crim.P. 323(h).

*Commonwealth v. Silo*, 480 Pa. 15, 20–21, 389 A.2d 62, 65 (1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979). The established exceptions to the warrant requirement were recently enumerated by the Superior Court as follows:

> The warrant requirement, however, is excused where exigent circumstances exist. [*Coolidge v. New Hampshire*, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971).] Exceptions arise where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons.

*Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101, 106 (1978) (footnote omitted). See also: *Commonwealth v. Chandler,* 505 Pa. 113, 477 A.2d 851 (1984); *Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979); *Commonwealth v. Hinkson,* 315 Pa.Super. 23, 461 A.2d 616 (1983). Other exceptions to the warrant requirement arise in situations where a warrantless search or seizure by police "does not amount to a significant invasion of a defendant's reasonable expectations of privacy." *Commonwealth v. Holzer, supra.* Such exceptions include consensual searches, seizure of abandoned property and plain view searches. See: *Commonwealth v. Holzer, supra,* 480 Pa. at 102 n. 6, 389 A.2d at 106 n. 6; *Commonwealth v. Albrecht,* 510 Pa. 603, 613, 511 A.2d 764, 769 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987) (consent); *Commonwealth v. Pine,* 370 Pa.Super. 410, 419, 536 A.2d 811, 816 (1988) (plain view); *Commonwealth v. Vecchione,* 327 Pa.Super. 548, 557, 476 A.2d 403, 408 (1984) (abandoned property). A warrantless search also may be made pursuant to a lawful arrest. See: *Commonwealth v. Norris,* 498 Pa. 308, 315, 446 A.2d 246, 249 (1982); *Commonwealth v. Walker,* 348 Pa.Super. 207, 217, 501 A.2d 1143, 1148 (1985).

*Commonwealth v. McBride,* 391 Pa.Super. 113, 119–20, 570 A.2d 539, 542 (1990).

Instantly, the trial court concluded that the police entry into appellant's home without a warrant was justified because consent had been given thereto and also because exigent circumstances had existed which suggested a possibility that evidence would be destroyed. After a most careful review, however, we are unable to find that the trial court's conclusions are supported by the record. Indeed, even the Commonwealth does not argue that the entry was pursuant to consent or exigent circumstances. Rather, it is the position of the Commonwealth that no violation of the Fourth Amendment occurred where, as here, police made a

warrantless entry solely to secure the residence while a search warrant was being obtained.

■ At trial Edward Ferraro testified that he had opened the door in response to knocking by the police. Detective Frank testified at the suppression hearing and again at trial that, prior to knocking on appellant's door, the police had already determined that a warrantless entry would be necessary to prevent a possible destruction of evidence. According to Frank, after he had identified himself as a police officer and Ferraro had responded by opening the door, Frank said to Ferraro that the police "were coming in to secure the place because we had reason to believe that there was narcotics in there." At this point, the police entered. There is no evidence whatsoever that the police asked Ferraro's permission to enter and search the premises or that Ferraro expressly consented to such an entry and search. On the contrary, the police believed they were operating under an exigency which required an immediate warrantless entry. The Superior Court discussed the issue of consent for a warrantless entry by police under similar circumstances in *Commonwealth v. McBride, supra,* saying:

'It is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business. If admission is voluntarily granted by a person who is in a position to give such effective consent, then the policeman may enter and make observations while therein consistent with the scope of the permission he was given. But the mere fact that the door of the house is opened in response to the officer's knock or ring does not mean that the officer is entitled to walk past the person so responding into the interior of the residence. Nor may the officer enter the home when there is no response at all.'

*Commonwealth v. McBride, supra* at 120–21, 570 A.2d at 542–543, quoting 1 W. LaFave, Search and Seizure, § 2.3(b) at 387 (1987) (footnotes omitted). Applying this rationale to

the instant case, we conclude that the record does not support the trial court's conclusion that Ferraro consented to an entry by police into appellant's home.

Moreover, even if Ferraro had manifested consent, there is no evidence and the trial court did not find that he was authorized to give such consent. "The Fourteenth Amendment does not preclude a warrantless search of property when consent is given by a person possessing the authority to consent to such search." *Commonwealth v. Albrecht*, 510 Pa. 603, 613, 511 A.2d 764, 769 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). However, "[a] third party who has no interest nor control in a premises may not give the police valid consent to conduct a warrantless search of the premises." *Commonwealth v. Netting*, 315 Pa.Super. 236, 239–240, 461 A.2d 1259, 1260 (1983). See also: *Commonwealth v. Garcia*, 478 Pa. 406, 423–424, 387 A.2d 46, 54–55 (1978). "[O]rdinarily a mere guest in premises may not give consent to search those premises which will be effective against the superior interest and authority of the host." 3 W. LaFave, Search & Seizure, § 8.5(e) at 309 (footnote omitted). Instantly, the record reveals that at the time of the police entry into appellant's house Ferraro had only known appellant for a few months and had been staying with appellant for about eight days because of family problems which he was then experiencing. Because he was a mere guest in appellant's home, there is no basis for concluding that Ferraro had authority to consent to a warrantless police entry and search. The evidence does not disclose that express authority had been given, and the relationship was insufficient to permit authority to be inferred therefrom.[3]

Normally, a reasonable belief by police that evidence is likely to be destroyed will give rise to exigent circumstances sufficient to justify a warrantless entry into a private residence. See: *United States v. Edwards*, 602

3. The trial court also did not find and there is no evidence to support a finding that the police reasonably believed that Ferraro had authority to consent to a police search of the premises. See: *Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

F.2d 458 (1st Cir.1979); *United States v. Rubin,* 474 F.2d 262 (3d Cir.1973), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Commonwealth v. Conn, supra.* However, "[t]he exigent circumstances doctrine does not extend to law enforcement agents who 'create their own exigencies.'" *United States v. Cattouse,* 666 F.Supp. 480, 487 (S.D.N.Y.1987), quoting *United States v. Segura,* 663 F.2d 411, 415 (2d Cir.1981), *aff'd on other grounds,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Police may not justify a warrantless entry and search on the basis of exigent circumstances of their own making. *United States v. Thompson,* 700 F.2d 944, 950–951 (5th Cir.1983). See also: *United States v. Socey,* 846 F.2d 1439, 1448 (D.C.Cir. 1988), *cert. denied,* 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988); *United States v. Webster,* 750 F.2d 307, 327–328 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); *United States v. Rosselli,* 506 F.2d 627 (7th Cir.1974). Cf. *United States v. Collazo,* 732 F.2d 1200, 1204 (4th Cir.1984), *cert. denied,* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985) ("The government will not be allowed to plead its own lack of preparation to create an exigency justifying warrantless entry.").

█ Instantly, the exigent circumstances found to exist by the trial court were created by the police themselves. After discovering cocaine in the package addressed to appellant, it was the police who removed the bulk of the cocaine before delivering the package to appellant. Thereafter, it was appellant's possible discovery that cocaine had been removed upon which the police relied to establish an exigency justifying a warrantless entry. Because this exigency was created by actions of the police themselves, their warrantless entry into appellant's home cannot be justified under the doctrine of exigent circumstances. See: *United States v. Thompson, supra; United States v. Segura, supra; United States v. Rosselli, supra.*

█ Notwithstanding the lack of consent or exigent circumstances justifying the warrantless entry into appellant's house, the Commonwealth argues that it was permissible

for police to enter and secure the residence without a warrant while other officers were in the process of obtaining a warrant. In support thereof the Commonwealth relies upon the decision of the Superior Court in *Commonwealth v. Anderson*, 272 Pa.Super. 167, 414 A.2d 1060 (1979). In that case, the police had probable cause to arrest the defendant for murder and went to look for him at the home of his stepfather, with whom he resided. The stepfather gave police permission to enter the house and look for the defendant. He also led the police to the defendant's second floor bedroom where the police lifted the mattress of the bed and found a knife. The Superior Court held that the knife had been seized in violation of the Fourth Amendment because the police sought and were given consent only to search for the defendant and not for weapons. The Court observed that a guard could have been posted at the door to the bedroom to prevent the possible removal or destruction of evidence. *Id.*, 272 Pa.Superior Ct. at 171, 414 A.2d at 1062.

Contrary to the Commonwealth's suggestion, *Anderson* does not authorize warrantless entry to secure a residence until a warrant can be obtained. Entry in that case had been made pursuant to consent given by the owner of the home. In the instant case, entry into appellant's home was made in the mistaken belief that it was justified by exigent circumstances. As we have observed, moreover, effective consent had not been given for the police to enter. Our review, therefore, has disclosed no basis for the warrantless entry. As such, appellant's rights under the Fourth Amendment were violated when the police entered his home without a warrant. In the absence of consent or exigent circumstances, there was no exception which permitted police to enter appellant's home without a warrant to secure the residence.

██ Finding a violation of appellant's Fourth Amendment rights, however, does not end our inquiry. It is only where unlawful police conduct has led to the discovery of evidence that suppression of such evidence is required. Where the discovery of evidence can be traced to a source

independent of the initial illegality, suppression is not mandated. See: *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Melilli,* 521 Pa. 405, 420–421, 555 A.2d 1254, 1262 (1989). "The 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.'" *Commonwealth v. Gibbs,* 387 Pa.Super. 181, 185, 563 A.2d 1244, 1246 (1989), quoting *Costello v. United States,* 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551, 561 (1961).

In *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the issue before the United States Supreme Court was the admissibility of evidence seized pursuant to a valid search warrant, where, prior to obtaining the warrant, the police had illegally entered and secured the premises. The Court held that all evidence which had not been observed during the initial illegal entry and which was discovered upon execution of the search warrant was independent of illegal police action and properly admissible as evidence. Whether evidence which had been observed following the initial entry and before execution of the warrant was properly subject to suppression was not decided. The Court of Appeals for the Second Circuit, in *United States v. Segura,* 663 F.2d 411 (2d Cir.1981), had held that such evidence was properly suppressed by the trial court, and the government did not appeal the ruling.

In the aftermath of *Segura,* several Circuit Courts were presented with similar issues and held that even where police had observed evidence after an illegal entry and such evidence had been seized during the subsequent execution of a valid search warrant, suppression was not required where the evidence would inevitably have been discovered during a subsequent, lawful search. See: *United States v. Whitehorn,* 829 F.2d 1225, 1230–1232 (2d Cir.1987), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988); *United States v. Whitehorn,* 813 F.2d 646, 649–650 (4th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 931 (1988); *United States v. Merriweather,* 777

F.2d 503, 506 (9th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1497, 89 L.Ed.2d 898 (1986); *United States v. Moscatiello,* 771 F.2d 589, 602–604 (1st Cir.1985), *vacated on other grounds sub. nom., Carter v. United States,* 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986). See also: *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (defining "inevitable discovery" exception to exclusionary rule). In applying the concept of inevitable discovery, the Fourth Circuit reasoned as follows:

The question remaining for decision is the effect of discovery of evidence as a result of the illegal bomb sweep when that same evidence is subsequently found and seized under a valid search warrant. The district court correctly ruled that on the authority of *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the evidence discovered for the first time during the search pursuant to the warrant is admissible. But what concerns us is evidence that was first discovered during the illegal search and thereafter rediscovered and seized under a valid search warrant.

. . . .

Aside from *Segura,* the only other relevant Supreme Court ruling on the issue is *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), which held generally that unlawfully obtained evidence was nevertheless admissible if it could be established that ultimately or inevitably it would have been discovered by lawful means. *Nix* was concerned with evidence pertaining to the discovery and condition of a murder victim's body which was actually discovered by interrogation of a defendant in violation of his right to counsel but with respect to which there was ample and compelling evidence to show that search parties were approaching the actual location of the body, that the search would have continued and that the body would inevitably have been found. The significance of *Nix* is its recognition and application of the "inevitable discovery" exception to the

exclusionary rule barring the use of evidence obtained in violation of constitutional rights.

. . . .

[U]nless and until the Supreme Court rules otherwise, the inevitable discovery rule may be applied even though the evidence validly obtained under a search warrant was previously uncovered in an illegal search. Stated otherwise, where it appears that evidence "inevitably would have been discovered by lawful means," the deterrence rationale of the exclusionary rule has "so little basis" that the rule should not be applied. *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509.

*United States v. Whitehorn, supra,* 813 F.2d at 649–650. In adopting this approach, the Second Circuit specifically disavowed that part of its prior decision in *United States v. Segura, supra,* which had held that evidence observed by police following an illegal entry was necessarily subject to suppression, notwithstanding the subsequent execution of a valid search warrant. See: *United States v. Whitehorn, supra,* 829 F.2d at 1231.

Four years after its decision in *Segura,* the Supreme Court finally addressed the issue of the admissibility of evidence which had been first observed in plain view by police following an illegal entry and which had been seized subsequently pursuant to a valid search warrant. The Court held, in *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), that the Fourth Amendment does not require suppression of evidence initially discovered by police following an illegal entry into a private residence where the same evidence is rediscovered during a later search which is conducted pursuant to a valid warrant issued independently of the initial illegal entry.

■ Viewing the facts of the instant case in light of the above decisions of the federal courts, we are satisfied that no basis exists for suppressing the evidence seized from appellant's home. Any evidence that was found for the first time during the execution of the search warrant was

admissible pursuant to the Supreme Court's holding in *Segura v. United States, supra.* As for the evidence which had first been observed in plain view following the illegal entry, it was subsequently seized pursuant to a valid search warrant issued independently of observations made during the illegal entry. This evidence would inevitably have been discovered during the subsequent search pursuant to the valid warrant. Therefore, even though appellant's Fourth Amendment rights were violated by the initial illegal entry by police, suppression of the evidence subsequently seized pursuant to the valid search warrant was not constitutionally required. To hold otherwise would be contrary to the purpose of the exclusionary rule, for it would put the police in a worse position than they would have occupied if no violation had occurred. *Murray v. United States, supra* at 541, 108 S.Ct. at 2535, 101 L.Ed.2d at 483; *Nix v. Williams, supra* 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d at 387.

■ The fact that the police included their plain view observations in the affidavit of probable cause for the search warrant does not compel a different conclusion.[4] "In deciding whether a warrant issued in part upon information obtained through exploitation of illegal police conduct is valid, we must consider whether, absent the information obtained through the illegal activity, probable cause existed to issue the warrant." *Commonwealth v. Shaw,* 476 Pa. 543, 555, 383 A.2d 496, 502 (1978). See: *Commonwealth v. Gullett,* 459 Pa. 431, 435–436, 329 A.2d 513, 515 (1974); *Commonwealth v. Knowles,* 459 Pa. 70, 80, 327 A.2d 19, 24 (1974); *Commonwealth v. Riffert,* 379 Pa.Super. 1, 14, 549 A.2d 566, 573 (1988). See also: *United States v. Salas,* 879 F.2d 530, 536–539 (9th Cir.1989), *cert.*

4. The penultimate paragraph in the affidavit of probable cause in support of the search warrant was as follows:

On 05–05–88 at 2030 hours, your affiants secured the residence for the purpose of obtaining a search warrant for the residence. While securing the residence and detaining the occupants your affiants observed paraphernalia, packaging items, syringes and the opened cardboard shipping box that was delivered by an undercover Penn Hills Police Officer. All of the items mentioned above were in plain view.

*denied,* —— U.S. ——, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989); *United States v. Agapito,* 620 F.2d 324, 338 (2d Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). Instantly, when the search warrant is viewed without reference to the plain view observations which occurred after the illegal entry into appellant's house, it is abundantly clear that the untainted information in the warrant was more than adequate to establish probable cause for the warrant's issuance. With all reference to the plain view observations excised, the affidavit of probable cause in support of the search warrant reads as follows:

> Your affiants have received information in the past from a confidential reliable informant that Jack Ariondo, 560 Springdale Dr., Pgh, PA 15235 was receiving packages through United Parcel Service that had cocaine concealed in them.

> Your affiants contacted UPS and UPS confirmed that packages were being delivered to 560 Springdale Dr., Pgh, PA 15235 on a regular basis. A package watch was requested by your affiants and Jack Wood, UPS Security and stated that the packages would be held until the Penn Hills Police were notified.

> On 05–05–88, Jesse Holman, UPS Security notified your affiants that UPS received a package that was destined for 560 Springdale Dr., Pgh, PA 15235.

> Your affiants requested that UPS bring the package to the Penn Hills Police Dept. for examination. At approximately 1710 hours your affiants had a Penn Hills certified drug dog check the package at which time the dog alerted by scratching and biting the package, which indicates that drugs are present.

> Your affiants obtained a search warrant (Warrant Control Number 03378) for the package based on the above information. The package was opened an[d] the contents were examined. Found inside of the package was a large plastic baggie containing a white lumpy substance. The white lumpy substance was field tested with positive results for the presence of cocaine. A small portion of

the cocaine was repackaged and the package was resealed.

On 05-05-88 Jesse Holman and an undercover Penn Hills Police Officer delivered the resealed package to 560 Springdale Dr., Pgh, PA 15235. At 2020 hours the packaged [sic] was signed for and taken by Jack Ariondo.

. . . .

Based on the above information your affiants believe that probable cause exists to obtain a search warrant for any additional cocaine and/or items used to package and distribute cocaine, which may be hidden in the residence.

We conclude, therefore, that the information gained through the initial warrantless entry did not taint the subsequent search which was conducted under authority of a valid search warrant. See: *United States v. Salas, supra* at 537-539. It follows that the suppression court did not err in refusing to suppress the evidence seized from appellant's home.

■ To determine whether the evidence introduced at trial was sufficient to prove that appellant had the requisite intent to deliver the cocaine found in his possession, we consider "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson,* 506 Pa. 469, 472-473, 485 A.2d 1102, 1103 (1984). See also: *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988); *Commonwealth v. Brady,* 385 Pa.Super. 279, 282, 560 A.2d 802, 804 (1989). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Stockard,* 489 Pa. 209, 213, 413 A.2d 1088, 1090 (1980), quoting *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354

(1979). See also: *Commonwealth v. Guest,* 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975); *Commonwealth v. Croll,* 331 Pa.Super. 107, 116–117, 480 A.2d 266, 271 (1984).

 "It is well established that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver." *Commonwealth v. Fisher,* 316 Pa. Super. 311, 322, 462 A.2d 1366, 1371 (1983). See also: *Commonwealth v. Santiago,* 462 Pa. 216, 223–225, 340 A.2d 440, 444 (1975); *Commonwealth v. Hunt,* 256 Pa.Super. 140, 149, 389 A.2d 640, 644 (1978). Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use. *Commonwealth v. Bagley,* 296 Pa.Super. 43, 50, 442 A.2d 287, 290 (1982). See also: *Commonwealth v. Johnson,* 358 Pa.Super. 435, 444, 517 A.2d 1311, 1316 (1986); *Commonwealth v. Wallace,* 265 Pa.Super. 91, 94–95, 401 A.2d 816, 817 (1979); *Commonwealth v. Harris,* 241 Pa.Super. 7, 359 A.2d 407 (1976); *Commonwealth v. Brown,* 232 Pa.Super. 463, 466, 335 A.2d 782, 784 (1975).

> Under Pennsylvania law, intent to deliver may be inferred from possession of a large quantity of controlled substances. *Commonwealth v. Santiago,* 462 Pa. 216, 223, 340 A.2d 440, 444 (1975); *Commonwealth v. Pagan,* 315 Pa.Super. 7, 461 A.2d 321, 322 (1983); *Commonwealth v. Bagley,* 296 Pa.Super. 43, 442 A.2d 287, 289 (1982). Similarly, the absence of intent to deliver may be inferred where only a small amount of the controlled substance was discovered. *Pagan,* 461 A.2d at 323; *Commonwealth v. Gill,* 490 Pa. 1, 5, 415 A.2d 2, 4 (1980) (small amount of controlled substance consistent with personal use, not distribution).

*Commonwealth v. Smagala,* 383 Pa.Super. 466, 476, 557 A.2d 347, 351–352 (1989). However, "the amount [of con-

trolled substance] involved is not necessarily crucial to establishing an inference of possession with intent to deliver, if ... other facts are present." *Commonwealth v. Harris, supra* at 9 n. 3, 359 A.2d at 408 n. 3. See, e.g.: *Commonwealth v. Keefer*, 338 Pa.Super. 184, 190, 487 A.2d 915, 918 (1985) (although quantity and quality of methamphetamine seized from defendant was consistent with personal use, defendant's additional possession of empty glassine baggies, scales and numerous needles used for injecting drugs, along with his recent sale of drugs to police informant, constituted sufficient evidence to establish intent to deliver); *Commonwealth v. Harris, supra* (evidence that defendant possessed sixteen half spoons of heroin, two measuring spoons and a scale was sufficient to support finding of intent to deliver). See also: *Commonwealth v. Ramos*, 392 Pa.Super. 583, 573 A.2d 1027 (1990).

Instantly, appellant argues that the seizure of only 12.6 grams of cocaine from his home was insufficient to establish an intent to deliver. This argument ignores additional facts which were present in this case. First, although only 12.6 grams of cocaine were seized from appellant's residence, the police had earlier removed from the UPS package, which was to be delivered to his home, an additional 126.7 grams of cocaine. Secondly, along with the cocaine, police discovered in appellant's home several items of drug paraphernalia normally associated with drug distribution, including a triple beam balance scale, a portable gram scale, four bottles of inositol powder (a cutting agent), two electronic beepers, gem-pacs and plastic baggies. Additionally, at trial, the Commonwealth presented an expert witness, Detective Raoul Rapneth of the City of Pittsburgh's police narcotics unit, who testified as follows:

Q. Now, detective, you should be aware that—again, the evidence in this case indicates a—in one room—it has been identified as a master bedroom, the finding of the nearly half ounce of cocaine, the finding of both scales, the beepers, the platic [sic] bags on a dresser. In fact, here are some pictures, Commonwealth's Exhibit 4. I'll

show you the large scale on the dresser, some other items. Again, plastic bags found in the room, one of the bottles of Inositol shown here, and also Commonwealth Exhibit 4 is a photograph of Commonwealth Exhibit 1, the contents of the box.

Now, these things were all found in the master bedroom. You should also be aware that inside this box was this additional quantity of cocaine that was retained by the police. The box was then delivered and found open in the bedroom with all these other items—or virtually all these other items. Being aware of that, being aware of the purity of the cocaine, the packaging—or the materials and everything else, do you have an opinion as to whether the cocaine in this case was possessed with the intent to deliver or whether it was possessed for personal use?

A. Let me take one step—is it my understanding that the small portion of the drug was found in that bedroom also?

Q. Yes, in that bedroom, the approximately half an ounce.

A. Okay, based on everything that happened and the total of it all, in my opinion, the persons that were in possession of this and took possession of it and then opened it, as you have indicated to me, would definitely receive this and have it for distribution and not for personal use.

Q. Okay, and that is your opinion?

A. Yes.

 THE COURT: You mean not for personal use only?

 THE WITNESS: That's correct.

 MR. NESCOTT: Yes.

 THE WITNESS: The total of everything given would indicate, in my opinion, unequivocally that it was for distribution and not personal use.

BY MR. NESCOTT:

Q. Not personal use purely. You certainly can't rule out that some of it would be intended to be used for personal use.

A. That would be very common. As I indicated earlier, that someone who chose to deal this would also, very probably, use some of it; but in the quantities you've shown me and the packaging materials, the beepers, the scales, et cetera, there's no doubt in my mind whatsoever that this was for possession with intent to deliver.

Although appellant testified at trial that he was a heavy drug user and intended the cocaine for personal use, the credibility of his explanation was for the trial court, as trier of the facts. The court could, as it did, discount appellant's self-serving testimony. Other evidence amply, if not overwhelmingly, supported the trial court's finding that appellant had possessed the cocaine with intent to deliver some or all of it. Appellant's challenge to the sufficiency of the evidence, therefore, must fail.

The judgment of sentence is affirmed.

KELLY, J., filed a concurring statement.

CAVANAUGH, J., concurs in the result.

KELLY, Judge, concurring:

I agree that the fruits of the contested search were admissible under *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). I write separately only to note that the entire problem of the false exigency, such as that in this case, may be avoided by the simple expedient of applying for an anticipatory search warrant. *See Commonwealth v. Reviera,* 387 Pa.Super. 196, 199–208, 563 A.2d 1252, 1253–57 (1989).