J-S07025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD J. WYATT | |
| Appellant | No. 1313 MDA 2016 |

Appeal from the Judgment of Sentence February 24, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001177-2015

BEFORE:  BOWES, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:  **FILED FEBRUARY 08, 2017**

Ronald J. Wyatt appeals from the judgment of sentence, entered in the Court of Common Pleas of Lebanon County, following his conviction for multiple drug offenses.[1]  After careful review, we affirm.

The trial court aptly summarized the facts underlying Wyatt's arrest as follows:

> At the trial, Detective Michael DiPalo of the Lebanon Count Drug Task Force testified that he received information that [Wyatt] would be traveling to Philadelphia via the Pennsylvania Turnpike to pick up drugs on May 8, 2015. As a result, Detective DiPalo and other officers conducted surveillance of [Wyatt]'s home and anticipated route of travel. The officers eventually observed

---

[1] Wyatt was charged and convicted of three counts of possession with intent to deliver, 35 P.S. § 780-113(a)(30) (cocaine and marijuana), 35 P.S. § 780-113(a)(16)  (methamphetamine), and three counts of possession of a controlled substance, 35 P.S. § 780-113(a)(32) (cocaine, marijuana, and methamphetamine).

[Wyatt] driving a gold-colored van, which was registered to one of Defendant's family members, traveling on the Turnpike. After the van exited the Turnpike, officers from the South Londonderry Township Police Department followed it as it headed north on Route 72. When the van was stopped and searched, two cell phones were found inside. A K-9 unit was summoned and also conducted a search of the vehicle. The K -9 officer indicated to the engine compartment of the car. When the hood was opened, officers found a bag containing two pounds of marijuana, approximately an ounce of methamphetamine and an ounce of cocaine. When asked whether he had any other controlled substances at his residence [Wyatt] admitted that he had some additional cocaine and a cutting agent there. [Wyatt] accompanied the detectives to his home and led them to the cocaine and the cutting agent which were hidden in some paint cans in the basement.

Another member of the Drug Task Force, Detective Ryan Mong, also testified at the trial. Detective Mong was qualified as an expert to testify as to whether drugs were possessed for personal use or delivery. Detective Mong was assisting Detective DiPalo with surveillance and made the initial contact with [Wyatt] after the van was stopped. Detective Mong had [Wyatt] exit the van so that he could speak with him. After Detective Mong explained the information they had received, Defendant consented to a search of the van. Defendant told Detective Mong that there was a small amount of marijuana in the back of the van. When the officers opened the hood, [Wyatt] yelled "bingo, bingo, bingo." When Mong asked what he meant, [Wyatt] said "you'll find out." [Wyatt] told them to open the bag and then said that he would cooperate so that they could get to the "big guy." When he was asked whether he had other drugs at his home, [Wyatt] offered to take the detectives there to get them.

Detective Mong opined that [Wyatt] had possessed the marijuana, cocaine and methamphetamine with the intent to deliver. In reaching this opinion, he noted that the large amounts (807 grams - nearly two pounds – of marijuana, 51 grams of cocaine, and 28 grams of methamphetamine). These items were packed in bulk as they had been picked up from [Wyatt]'s supplier. Detective Mong explained that dealers usually purchase drugs in bulk because it is cheaper. In addition, no items which could be used for ingestion of the drugs

were found and [Wyatt] had $1,400.00 in currency on his person.

On cross-examination; Detective Mong acknowledged that disposable items could be used for the ingestion of controlled substances. He also explained that the detectives did a "walk-through" of [Wyatt]'s home and did not search drawers or cabinets. When asked about the consumption of drugs by an addict, Detective Mong indicated that a "terrible" addict could possibly use up to a hundred dollars' worth of controlled substance per day. However, he further noted that the amount of drugs in this case would last a user up to six months, depending on the frequency of use, and that a typical "user" would not be expected to have this quantity of drugs. The fact that he already had cocaine in his home and went out to purchase more also made it unlikely that the drugs were for [Wyatt]'s personal use. Detective Mong also acknowledged that a cutting agent could be used to dilute the potency of a controlled substance, but that doing so would reduce the "high."

[Wyatt] testified that he was sixty years of age and had been doing drugs since he was twelve years old. He indicated that he had suffered with drug addiction for many years and that he was using drugs at the time of this incident. He explained that he had purchased the drugs in Philadelphia because they were cheaper there. He admitted that he sold marijuana, but that the cocaine and methamphetamine were for his personal use. He used the proceeds from the marijuana sales in order to pay for his cocaine and methamphetamine habit. [Wyatt] claimed that the marijuana found in the back of the van was for his disabled son's medical needs. He further explained that he had used the cutting agent at his home to dilute the cocaine in order to avoid overdosing, but that he had ruined the cocaine by cutting it too much. He had those items hidden in the paint cans to keep it from children in his home. He claimed that the $1,400.00 was from sources other than drug sales. On cross-examination, [Wyatt] admitted that he had several clean urine tests around the time of this incident and Detective DiPalo testified that [Wyatt] had said nothing about being an addict to the detectives.

Trial Court Opinion, 7/26/16, at 2-5.

Wyatt was tried before a jury and convicted of all charges. On February 24, 2016, he was sentenced to 5 to 10 years' imprisonment. On February 29, 2016, Wyatt filed post-sentence motions that were denied. Wyatt filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

On appeal, Wyatt presents the following issues for our review:

(1)  Whether the Wyatt's motion for acquittal should be granted due to the Commonwealth's failure to present sufficient evidence at trial to prove the possession with the intent to deliver cocaine and possession with the intent to deliver methamphetamine?

(2)  Whether the jury's verdicts were against the weight of the evidence as it pertains to the possession with the intent to deliver cocaine charge and possession with the intent to deliver methamphetamine?

Wyatt first contends that the Commonwealth failed to prove, beyond a reasonable doubt, that he possessed cocaine and methamphetamine with the intent to deliver.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000). In order to convict an accused of possession with intent to deliver under 35 P.S. § 780-113(a)(30), "the Commonwealth must prove that he 'both

- 4 -

possessed the controlled substance and had an intent to deliver that substance.'" **Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011) (citation omitted).

Moreover, "[w]hen determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are 'the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash[.]'" **Id.** (citation omitted). "[E]xpert testimony is . . . admissible 'concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than an intent to possess it for personal use.'" **Id.** (citation omitted). "[P]ossession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption." **Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237-38 (Pa. 2007).

Wyatt claims that the Commonwealth failed to prove that he possessed the drugs with the intent to deliver. Specifically, he discredits the Commonwealth's expert, Detective Mong, who opined that, based upon the weight of the controlled substances, they were intended to be delivered. Wyatt argues that his own testimony (he is an addict who buys drugs in bulk

because it is cheaper, adds a cutting agent[2] to the drugs due to a past overdose experience, and was buying the drugs because he ruined a batch by using too much cutting agent) is more reliable than the expert's speculation. Finally, Wyatt asserts that officers did not find drug use paraphernalia in his home because they did not search drawers, closets, or other areas where an addict might hide paraphernalia.

Instantly, the trial court found that based on the sheer amount of drugs packed in bulk (almost two pounds of marijuana; 51 grams of cocaine; and 28 grams of methamphetamine), the absence of any drug-use paraphernalia in Wyatt's home or van, $1,400.00 found on Wyatt's person, and the presence of a cutting agent, the intent to deliver was proven beyond a reasonable doubt. We agree and find that there was sufficient evidence to sustain Wyatt's conviction of possession with intent to deliver. **_See Commonwealth v. Ariondo_**, 580 A.2d 341 (Pa. Super. 1990) (although defendant testified that he was heavy drug user and intended cocaine for personal use, court made its own credibility determination and discounted defendant's self-serving testimony where other evidence supported court's finding that defendant possessed cocaine with intent to deliver).

_____

[2] A cutting agent is a non-controlled substance which is mixed with a controlled substance in order to increase its volume and the potential profit from it.

In his final claim on appeal, Wyatt asserts that the jury improperly weighed the testimony of the Commonwealth's expert in determining that Wyatt possessed the drugs with the intent to deliver.

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.  As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice[.]

> Furthermore,

> > where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Rabold*, 920 A.2d 857, 860-61 (Pa. Super. 2007) (citations omitted).

Wyatt claims that, given his forthcoming testimony regarding the fact that he is an addict and had the financial resources to buy drugs in bulk, the court should have regarded him as more credible than the Commonwealth's expert, whose opinion was based on conjecture.  Again, we emphasize that the jury, as the trier of fact, was tasked with passing upon the credibility of the witnesses and determining the weight to be afforded the evidence. Moreover, the jury was free to believe all, part or none of Wyatt's testimony. Accordingly, we cannot conclude that the trial court palpably abused its discretion in ruling on Wyatt's weight claim.  *Rabold*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2017